## Maloney *v.* United Mine Workers of America et al., Appellants.

Argued April 12, 1932.  Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*E. C. Marianelli,* for appellants.—The court below should have sustained appellants motion to dismiss bill in equity.

Having found as a fact that the action of the district secretary-treasurer in rejecting the three nominations in question was based on the constitutional sections, the inquiry of the court below was at an end: Carlin v. Ancient Order of Hibernians, 54 Pa. Superior Ct. 512; Com. v. Union League, 135 Pa. 301; Lytle v. Assn., 91 Pa. Superior Ct., 152; Com. v. German Society, 15 Pa. 251.

The lower court should not have compelled appellants to perform an act which the constitution specifically prohibited them from doing.

*James M. Stack,* for appellee.—It is the duty of this court to require the executive board to perform its duty under its laws, and this results then in requiring the executive board to canvass, compute and tabulate the nominations of candidates for district offices of all locals which have been made in compliance with the constitution and by-laws of the association.

Since, in the case at bar, the disorder and confusion, with possible deprivation of rights of electors within the local unions, arose from the failure of the executive board "to direct the workings of the district" in the very important function of selecting its own officers, it became the duty of the court "to keep such association in the line of order and to correct abuses": Com. v. German Society, 15 Pa. 251; Com. v. Union League, 135 Pa. 301; Carlin v. A. O. H., 54 Pa. Superior Ct. 512.

OPINION BY MR. JUSTICE KEPHART, May 9, 1932:

The question presented by this appeal is moot, but because it involves a large class of citizens, and has been the basis of strife ending in riots and other breaches of the peace, we will determine the primary question involved: Brown v. Leib, 267 Pa. 24; Pardee v. Schuylkill Co., 276 Pa. 246.

The United Mine Workers of America is an unincorporated association, comprised of affiliated locals in 30

districts throughout the United States. District No. 1, here in question, comprising the Counties of Luzerne, Lackawanna, Sullivan and Susquehanna, has 135 locals. Each local has a president, recording secretary, and an official seal. This district has four inspection districts, each of which elects a member of the executive board, which also includes the president, vice-president, and secretary-treasurer of the district who are elected at large. The district organization has its own constitution and by-laws, which are subordinate to the constitution and by-laws of the international organization.

The officers of District No. 1 are selected under article IX, section 3, of the district constitution, which provides: "The District Secretary-Treasurer shall prepare nomination blanks and send them to Local Unions in good standing with the District and International Organizations not later than twelve weeks before the date of election, and only nominations made upon the blanks sent out by the District Secretary-Treasurer properly filled out and signed by the President and Secretary of the Local Union and with seal attached shall be recorded by the District Secretary-Treasurer.

"It shall be the duty of the Local Unions Recording-Secretary, acting as the qualified official for the Local Union as its representative to fill in the names of the members nominated by the Local Union upon the nomination blank received from the District Secretary-Treasurer and forward same to reach the District Secretary-Treasurer's office not later than eight weeks before the date of the election, and no nomination received at the District Secretary-Treasurer's office later than eight weeks before the date of election shall be recorded by the District Secretary-Treasurer."

Section 5 of the same article provides, inter alia, that "no member shall be elected to the office of District President unless he has received fifteen (15) or more nominations, as set forth in section 3."

The controversy before the court below related to the office of president. Appellee, Thomas Maloney, was an aspirant, as was John J. Boylan. Both were eligible as qualified members. Boylan had received nomination from 107 locals, and the dispute was over appellee's nomination. He had been nominated by 10 locals, but in his bill filed he averred that he had been nominated by 20 locals, and that the secretary-treasurer refused to record 10 of his nominations. The reason given for not recording these nominations was that they did not conform to section 3, in that they were not executed as required by the constitution, or because they were received too late, or were from a local that was defunct, or were otherwise imperfect.

The court below, after investigating what took place, directed Maloney's name to go on the ballot; this action and the jurisdiction exercised by the court constitute the main grounds of complaint.

The constitution and by-laws of such organizations are designed to promote harmony within the body, to prevent disputes, and, if any arise, to provide a tribunal to settle them. The duty of determining whether a candidate has received the required number of nominations to have his name placed on the ballot in this organization devolved on the secretary-treasurer. The constitution directs how nomination papers shall be executed and certified; and they cannot be filed in any other way. The secretary-treasurer would violate the express provision of the constitution if he files nomination papers that are not executed in accordance with the by-laws and constitution. He must, however, exercise this function in obedience to the by-laws, and cannot arbitrarily refuse regular nominations when filed, nor may he hold defective nominations received from the locals; he should return such papers immediately for proper execution.

Should the secretary-treasurer fail to file what is claimed to be a defective paper, or should any other

question be presented, either by the candidate, a local, or a member, with regard to nomination papers, the constitution and by-laws provide a complete remedy for settlement within the order. Section 4 of article III, states that the executive board "shall have full power to direct the workings of the organization......They shall...... deliberate upon and decide all questions brought to their attention, and their decision shall be final, until reversed by a higher tribunal within our organization, or by a District Convention." Section 5 of article VII, provides: "In order to insure justice, any officer, delegate or member shall have the right to prefer charges. Charges may be preferred to the Biennial Convention or to the District Executive Board at the option of the one preferring the charges. In the event that charges are preferred to the Executive Board, and they fail to obtain satisfactory redress, an appeal may be made to the Biennial Convention." Section 2 of the same article provides for a special convention to be called by the president upon request of five locals through the executive board.

Article III, section 3, of the international constitution which states that the action of the executive board shall be final, has reference to appeals to that body and does not exclude an appeal to the convention.

With this authority before him, Maloney could and did avail himself of his remedy. He appeared before the board with counsel; a full and complete hearing was had, and the board sustained the secretary-treasurer in his refusal to record the defective nominations. There being no allegations or proof of fraud, and it further appearing that the papers were defective, the jurisdiction of the court ended when it found the secretary-treasurer and board acted in accordance with the provisions of the constitution and by-laws of their organization in rejecting the nominations. When the officers of an association such as this in good faith, and in a reasonable, proper and legal manner under their by-laws and con-

stitution exercise their duties as a tribunal to settle disputes on matters pertaining to the association or the rights of any of its members, such exercise cannot be questioned collaterally; the courts may judge whether the exercise is arbitrary, and review the form of proceedings to see whether the tribunal has acted within its jurisdiction and in the line of order, but cannot review the case on its merits. Courts entertain jurisdiction to keep these tribunals within their own laws, and to correct abuses, so as to preserve, on the one hand, the rights of the association, and, on the other, those of the members, but they do not inquire into the merits in a regular course of proceeding: Carlin v. Ancient Order of Hibernians, 54 Pa. Superior Ct. 512; Lytle v. New Castle Agricultural Assn., 91 Pa. Superior Ct. 152; Com. v. Union League, 135 Pa. 301; Beeman v. Supreme Lodge, 215 Pa. 627.

Furthermore, appellee did not exhaust his remedy within the organization. From the action of the executive committee he could have appealed to the convention. Courts will not entertain jurisdiction unless all the remedies provided by the laws of the association are exhausted: Carlin v. Ancient Order of Hibernians, supra; Beeman v. Supreme Lodge, supra; Acri v. Bruscia, 265 Pa. 384; 5 C. J. 1364, section 101. The court below should have assumed jurisdiction only to ascertain if the acts done were in accordance with the constitution and by-laws of the order. It should not have gone beyond this and inquired into the merits of the case. We dismiss the appeal as the question is moot.

Appeal dismissed at appellant's costs.