## Hanlen v. Brotherhood of Locomotive Firemen and Enginemen et al.

*J. Dress Pennell* and *Horace A. Segalbaum,* for plaintiffs.
*Nauman, Smith & Hurlock* and *Thomas Stevenson,* for defendants.

SHANAMAN, P. J., twenty-third judicial district, specially presiding, June 2, 1933.—Plaintiff is an employe and fireman in the Enola yards of the Pennsylvania Railroad, and a member of the Brotherhood of Locomotive Firemen and Enginemen. He sued in equity the railroad, the brotherhood, and certain of their officers, as well as certain coemployes, alleging that they had interfered with his seniority and thus deprived him of a property right. In his bill he charged

that in January 1905 the railroad promised Harrisburg yardmen that if they would work in a new proposed yard at Enola the railroad would make it a closed pool or separate seniority district, that is, that those who should leave Harrisburg yard and come to Enola would have the prior right to pick the jobs and do the work in the Enola yard, according to seniority, ahead of any other employes of the railroad. He charged further that the railroad offered to hold this inducement open to all Harrisburg yardmen until March 15, 1905, after which it would receive applications generally from other employes; that the Enola yard was thus manned and put into operation, and was always thereafter recognized by the railroad as a separate seniority district; that plaintiff knew of and relied on the original promise made to the Harrisburg men who went to Enola, and knew of and relied on the fact that the Enola yard had been at all times, and was, when plaintiff began to work there for the railroad, a separate seniority district. He charged, finally, that the defendants had recently, by an alleged decision of the brotherhood communicated to the railroad, and by orders of the railroad issued consequent thereon, interfered with plaintiff's seniority, and had given Harrisburg yardmen work in the Enola yard to which the plaintiff was entitled. Plaintiff attached to his bill a copy of the constitution of the brotherhood and of the schedule of regulations and rates of pay for the government of firemen and hostlers in road and yard service, entered into and executed by the brotherhood and the railroad. Plaintiff prays injunctive relief, both preventive and mandatory. Defendants have filed preliminary objections to the bill, which after argument are before us in adjudication.

Plaintiff's bill states that it is brought in behalf of himself and all other employes of the Pennsylvania Railroad, similarly situated and interested, who may join with him and contribute to the expenses of the proceedings. A number of Enola yardmen who are not members of the brotherhood were permitted to join as parties plaintiff. Whether this was error, and whether the bill is a class bill, has been questioned, but appears to us unnecessary now to decide.

Article 13, sec. 8, of the constitution provides as follows:

"When the general grievance committee is not in session, the general chairman has authority to interpret the schedule."

"(b) General grievance committees shall have authority on their respective lines to regulate the mileage of firemen in accordance with the policy of the organization and shall also have complete jurisdiction over all matters of seniority and assignment to runs."

"(c) All rules, regulations, contracts, and agreements agreed upon by officials of a railway company, and a general grievance committee or its representatives, shall be binding upon all members working within the jurisdiction of the committee."

The bill alleges that the defendant railroad company and the defendant brotherhood duly adopted a schedule of regulations and rates of pay for the government of firemen and hostlers in road and yard service, which became effective November 1, 1929. The schedule contains elaborate regulations of rates of pay and the incidents of seniority, and provides that either party may change any or all of the regulations upon 30 days' notice.

The bill alleges a contract between the Pennsylvania Railroad and the original Harrisburg yardmen who left Harrisburg for Enola. The promise of the defendant company is alleged to be that it would create for them and would recognize a seniority in the Enola yard. The consideration or detriment suffered by them is that they left Harrisburg, went to Enola, and engaged themselves to serve there. This makes a contract, and it is a contract guaranteeing to them a

thing of pecuniary value, namely, their right to have first choice of such jobs as presented themselves. The fact that the contract was at will, that they could leave at will, and that the railroad could discharge them at will, does not affect the enforceability of their contract while they continued in the employ or their right to enjoy freedom from unlawful interference with their contract by others: Kraemer Hosiery Co. et al. v. American Federation of Full Fashioned Hosiery Workers et al., 305 Pa. 206, 214.

None of the original promisees of the railroad, however, is alleged to be a plaintiff or present employe of the railroad. The rights of such original promisees, if they were parties plaintiff in a bill similar to the present, are therefore not adjudicated. Nor is the effect of membership of such original promisees in the brotherhood at the time of the promise to them, or subsequently thereto, necessary now to determine.

The weight of the authorities, on principle and in number, favors the view that employes who are plaintiffs in a seniority case possess in their seniority no property right enforceable by the injunctive process of equity, if they base their claim on a rule, regulation, or contract established by the brotherhood of which they are members, and which it or its proper officers have modified or diminished by action both authorized under the constitution or bylaws of the order and taken without fraud or oppression: McMurray et al. v. Brotherhood of Railroad Trainmen et al., 50 F. (2d) 968, 970 (W. D., Pa.) ; Shaup v. Grand International Brotherhood of Locomotive Engineers et al., 223 Ala. 202, 135 So. 327, 328 (1931) ; Burger et al. v. McCarthy et al., 84 W. Va. 697, 100 S. E. 492, 493 (1919) ; Crisler v. Crum et al., 115 Neb. 375, 213 N. W. 366, 369 (1927) ; Aulich et al. v. Craigmyle et al., 248 Ky. 676. Where such facts or allegations of fact are presented, the courts will not go into the merits of the case: Maloney v. United Mine Workers of America et al., 308 Pa. 251, 256, 257.

In the present case, no fraud or oppression is alleged or shown, and the averments of the bill show that the action of the brotherhood officials is within the powers granted them by their constitution and is prima facie a reasonable attempt to administer the seniority rights of the members with due reference to changing conditions in the Harrisburg district. The communication of the brotherhood ruling, contained in the letter annexed to plaintiff's bill, clearly indicates that the physical location of the Enola and Harrisburg yards is such that the managing officers of the railroad, in handling the flow of freight traffic through the Harrisburg district, can and do move it through these two yards more or less indiscriminately, but that since the beginning of 1930 there has been a material shift in the flow of this service from the Harrisburg yard to and through the Enola yard, and that as this diversion in the flow of service may continue for an indefinite time, or possibly permanently, and there may be in the future a similar shift from Enola to Harrisburg, the brotherhood officials decide that the assignments in these two yards necessary to take care of the flow of freight service through the Harrisburg district shall be apportioned between the men of the two yards on the basis of the relative average number of assignments made to the two yards in work of the Harrisburg district during the four years prior to 1930, the available records not antedating 1926; and therefore they request the company to provide for such assignment on the basis of 61.47% to the Harrisburg firemen and 38.53% to the Enola firemen.

The authorities are perhaps unanimous that a further prerequisite to equitable intervention is a showing in the plaintiff's bill that the plaintiff has exhausted the remedies provided within the association of which he is a member by its constitution and bylaws: Maloney v. United Mine Workers of America et al.,

supra, p. 257; Shaup v. Grand International Brotherhood of Locomotive Engineers, supra, 135 So., pp. 327, 328. The present bill contains no such averment, and in its exhibits shows the existence of appellate tribunals within the association.

Plaintiff seeks to avoid the force of the authorities above cited by basing his claim upon the original contract of 1905 entered into between certain employes of the Harrisburg yard and the railroad. None of the plaintiffs is alleged or shown to have been a party to that contract. Neither is it alleged or shown that the contracts of 1905 were made expressly for the benefit of present plaintiffs. A stranger to a contract and to its consideration cannot sue upon it: Sweeney v. Houston, 243 Pa. 542. Further it is not alleged or shown that the railroad company by its authorized agents made any such contract with the present plaintiffs, or directly or expressly offered them such inducement. The sum and substance of the averments on this head is that the Pennsylvania Railroad Company in January 1905 promised its Harrisburg yardmen that, if they would apply for assignment to the proposed new Enola yard, it would be made and preserved a separate seniority district, so that they would have priority in assignment in such yard over other employes of the system; that applications were permitted until a date in March 1905; that many years later plaintiffs, being already in or entering into the employ of the defendant company, took assignments to the Enola yard and established a seniority therein, knowing that the defendant company had made such promise to its Harrisburg yardmen in 1905, and knowing and relying upon the fact that it had kept that promise. It is nowhere averred that the company knew that the plaintiff so relied. While there are in the latter portion of the bill one or two references to the inducements offered to the plaintiff, neither time, place, agency, nor description of the inducement is stated, and the only specific averment of the cause of action is as cited above. This is in no way tantamount to an averment that the Pennsylvania Railroad by properly authorized agents offered these plaintiffs or held out to them the very promise and inducement which it had made to certain of its employes in 1905.

Did the plaintiffs and the railroad impliedly so stipulate? The bill does not even aver such implied stipulation. It is familiar law that the ground of action must be set forth with precision and certainty: 21 C. J. 392. One entering employ doubtless finds certain conditions of employment prevalent at the inception of the relation. He finds, for instance, certain lighting conditions, sanitary conditions, safety rules, customs of control by the employer of the service rendered by the employe, conditions of payment, and of assignment of duties. All these things may be matters of new establishment or old custom, but they do not constitute part of the contract of employment unless made so by express agreement or by lawful statutory enactment. The new employe may find old employes doing the same work under conditions the continuance of which has been guaranteed by the employer to certain of the employes by special agreement with them, and which the employer is maintaining generally. Without more, no contract rises between the new employe and his employer that the conditions shall continue as to him. It may be assumed, and is in fact averred, that plaintiff ascertained that the employer utilized a system of seniority rules in allotting a preference of jobs among its employes. This system doubtless appeared to him as an attractive feature, for he avers that he relied upon it. He thereupon entered the employ. He also knew, according to the averments of the bill, that many years before the time of his entering the employment, the company had expressly promised certain of its employes that such conditions would continue. No implication arises that the employer stipulated with and

promised to him that they should continue, any more than such implication would arise as to any other existing condition which made the job attractive to him and induced him to try it. If such implication arose as to one existing condition, it would arise as to many. Some of the employes are brotherhood members, others not. The rights of such may differ in extent. One could not with any certainty determine what existing conditions were impliedly stipulated, and what not; yet it is quite essential to any contract, whether express or implied, that the nature and extent of its obligations be certain: 13 C. J. 266 § 59. Of course, if the plaintiff and his employer have expressly stipulated that any such condition continue, and the parties have contracted in reliance on such express stipulation, a new and important term in the contract is created; but nothing like this is averred.

Plaintiffs therefore are impaled on the horns of a dilemma. They set forth an express contract made between the railroad and certain Harrisburg yard employes in 1905, but they set forth no such express contract between themselves personally and any authorized agent of the company. Therefore, if there is a subsisting contract governing any seniority rights in the Enola yard, it must, from the averments of the bill, be found either in the special contract made in 1905 or in the general agreement consummated between the brotherhood and the railroad. To the former they were not parties, and in it they have no enforceable interest; and in the latter, while they may have an interest, they are precluded from maintaining this action because the merits have, without fraud, oppression, or arbitrariness, alleged or shown, been adjudicated by the lawfully constituted authority within the order, and because plaintiffs do not show or aver that they have exhausted their remedies of appeal within their brotherhood.

Upon this point, we advert here to the averment of the bill that the schedule of regulations and the constitution of the Brotherhood of Locomotive Firemen and Enginemen do not provide for the abrogation or modification of the said closed pool or separate and distinct seniority district or region. It may be true that they do not specifically refer to the Enola yard seniority district, but neither do they specifically except the Enola yard seniority district from the general provisions. As stated above, they do give to the officials who have acted "complete jurisdiction over all matters of seniority and assignment to runs."

The bill further avers that the said order violates regulation 5-H-1 of the schedule, to the effect that firemen will not be used to perform service assigned to a seniority district other than their own, except in a temporary or prolonged emergency under described conditions. This again goes to the merits, is therefore not properly for our determination, and in view of economic conditions in the railway industry, no bad faith or arbitrariness of the brotherhood decision has been shown or averred. See Maloney v. United Mine Workers of America et al., supra.

As for the nonmembers of the brotherhood who have been permitted to join in the bill, the effect of the averments in the bill is the same. They show no express promise of seniority to them and no rights in the contract of 1905, and therefore, if there is a contract protecting their seniority, it is the general contract made by the brotherhood with the railroad for the benefit of all employes, union or non-union. But of this contract it is with some force contended that they cannot have the benefits without the burdens. At least it is correct to rule that if they are entitled, as they doubtless are, to the benefits of seniority contracted for by the brotherhood and the railroad, under the familiar principle that, since they were contemplated as parties for whose benefit the brotherhood

was contracting, they may avail themselves of its benefits, then it follows on equally familiar principles that they must take such benefits under the condi-- tions imposed upon them, namely, that the brotherhood retain under its consti- tution the right to alter and interpret such seniority as is daily administered by the railroad.

The preliminary objections are therefore sustained and the bill dismissed. Each party is to pay such party's own costs.

From Homer L. Kreider, Harrisburg, Pa.