## Cheetham v. Local No. 222, United Garment Workers of America, etc.

*Louis Lipschitz,* for plaintiff..
*William Sandberg,* for defendants.

LEWIS, J., September 18, 1945.—This is a bill in equity for an injunction to restrain defendant from expelling plaintiff from membership in a workers' union, to compel her reinstatement as a member, and for damages sustained by wrongful expulsion from the union and consequent discharge from her employment.

The bill avers that plaintiff had been employed for 15 years by the Nanette Manufacturing Company, and was a member of Local No. 222 of the United Garment Workers of America, whose membership consists of the employes of this company, with whom the company had a closed-shop agreement; that she was illegally expelled from membership in the union, and thereafter was discharged from her work, in violation of the constitution of the union, which requires written charges and a hearing thereon before a member can be expelled. The bill prays for an injunction, that plaintiff be reinstated as a member of the union, restored to her employment, and compensated for her damages.

The answer admits plaintiff was a member of the union and that she was expelled, but denies that she was illegally ousted or damaged thereby. The answer charged that plaintiff attempted to induce large num-

bers of the members to join a different union and thereby disrupt defendant union. The answer also admits that there were no written charges or hearing, and pleads that, by reason of the emergency created by the plaintiff's actions, she forfeited those rights.

*Findings of Fact*

1. The plaintiff had been employed by the Nanette Manufacturing Company for approximately 16 years, her last wage averaging $26 per week, and her work was satisfactory to her employer.

2. Plaintiff was a member of Local 222 of the United Garment Workers of America, an unincorporated labor union composed of employes of the Nanette Manufacturing Company, including numerous of the defendants. Plaintiff was in good standing therein so far as concerned the payment of her dues.

3. The union and the Nanette Manufacturing Company maintained a closed-shop agreement, and a large portion of the particular industry locally likewise maintain closed-shop relations with unions.

4. On January 13, 1945, plaintiff was notified that she was expelled from the union; this notification was sent out without written charges having been preferred against her, without a hearing and without proper notice. A notice of plaintiff's expulsion was transmitted to her employer, who thereupon discharged plaintiff, in accordance with his agreement with the union.

5. The provisions dealing with the disciplining and expulsion of members of the union are contained in article XIII, sections 8 and 9 (p. 34 of constitution) and in standing rule no. 8 (p. 47 of constitution).

"Section 8. No member of the United Garment Workers of America shall be fined or expelled by a Local Union or by the General Executive Board without being properly notified of the charges against him

and being given a fair hearing, except as otherwise provided for in the Constitution.

"Section 9. Charges may be made by a member of the United Garment Workers of America, but must be submitted in writing to the Local Union of which the defendant is a member. The Local Executive Board shall duly notify the member of the nature of the charges and of the time and place of trial, which shall be within one (1) month from receipt of charges. Should the accused member fail to appear when notified the Executive Board shall proceed to take testimony the same as if accused member were present and submit their decision and evidence in brief and concise form in writing to the Local Union."

Standing rule no. 8 provides as follows:

"Charges against officers and members must in all cases be presented in writing, otherwise they shall not be considered."

6. Defendant union and its officers failed to comply with the requirements of the constitution and by-laws as to the requirement of written charges, notice and hearing before expelling the plaintiff.

7. By reason of the expulsion notice and resulting discharge, plaintiff suffered damages in that she was without suitable employment until the commencement of this action. Such damages amounted to $104.

### Discussion

This controversy is of some importance due to the tremendous growth of labor unions within the last decade and their resulting control over the nation's industries. Contracts between unions and employers operate to deprive the individual of his natural right to earn a livelihood unless he becomes a member of a union and subjects himself to the rules of the union. For these reasons it is the duty of the courts to be vigilant to safeguard such rights as the individual re-

tains, and to protect them from infringement by these stronger combinations; otherwise unions intended to be instruments of social good may by tyrannical action become more harmful than the evils they seek to correct.

There is no doubt that a labor union has the right to expel a member under certain circumstances. It is the duty of a reviewing court to ascertain if such a power has been exercised in accordance with the requirements of the fundamental laws of the association: Compare Maloney v. United Mine Workers of America et al., 308 Pa. 251. Before a member can be expelled the procedure set forth in the constitution and bylaws must be followed: See Engle v. Pottsville Division B. of L. E., 66 Pa. Superior Ct. 356, at 362. This requires an impartial hearing, and though the by-laws failed to make such provision our judicial requirements of fair play would insist upon it: See Heasley et al. v. Operative Plasterers and Cement Finishers International Association et al., 324 Pa. 257.

The constitution of the union in question required written charges to be preferred against a member, followed by a notice and a hearing. It is admitted the union did not comply with its own laws in this respect, hence we are concerned only with the contentions put forward in an attempt to excuse the union's failure to comply with its own rules. It is contended there was an "emergency", and that the action taken in such an emergency was justified. In the last decade we have become quite familiar with the argument that an "emergency" justifies action which is otherwise unconstitutional. An emergency is a good test of the validity of guarantees of rights contained in any constitution. Unless the power to set aside those guarantees in event of an emergency is clearly conferred, the courts will not support the exercise of the power. The article to

which the defendants point makes no such provision as they contend.

We were impressed by defendants' consciousness of the arbitrary nature of their action. We suggested during the course of the hearing that proper notice and hearing might still be given to plaintiff, but defendants insisted upon ignoring the due process outlined by their own constitution. If defendants are to operate as a union of workers in a free state, they must learn to observe democratic processes, particularly when it is required by their own contract.

Defendants also set up that since plaintiff was "guilty of disloyalty", she sacrificed the right to a hearing. In a democracy even treason must be proved at a fair trial. Defendants, blinded by their self-righteousness, can conceive of no error in their viewpoint or their actions. They assumed the roles of prosecutor, court, jury and executioner. Constitution and laws are barricades erected against such imperious conduct. Throughout the hearing defendants placed much emphasis on the plaintiff's "guilt and disloyalty", which they assumed. All that defendants allege may be true, but until it is proven by the process outlined in their contract of association it is not available to them as a defense.

Defendants assert also that plaintiff could have minimized her damage by securing other employment. The evidence establishes that the industry is largely a "closed-shop" industry. That plaintiff might have obtained employment in one of several shops that have not yet become closed shops is not sufficient to overcome her right to insist upon her status as a union worker, with the benefits and advantages which defendants themselves would be the first ones to expound. Plaintiff cannot be required to forego her union status in order to minimize damages occasioned by defendants' wrongdoing. To give up union status would mean not only

the loss of rights which the member has been indoctrinated to cherish, but might result in financial loss as well. Plaintiff had been serving one employer for 15 years, and had built up a seniority which is valuable to any worker. In addition she had paid dues into the union for 11 years, and this entitled her to death benefits.

After reading the portion of the constitution of defendant union dealing with death benefits, it is regrettably evident such benefits are of little or no value, since the general executive board can end the right to such benefits by merely transferring the fund to the general fund for their own expenses. Nevertheless, for what it is worth, plaintiff was within her rights to insist upon her membership, and cannot be required to sacrifice it in order to obtain other employment.

We therefore conclude that plaintiff was improperly expelled from the union, that such expulsion resulted in the loss of her employment, and that she was thereby damaged by being unemployed for four weeks.

### Conclusions of law

1. Plaintiff was illegally expelled from membership in Local 222 of the United Garment Workers of America.

2. The damage to plaintiff by reason of loss of employment from January 16, 1945, to February 10, 1945, was a direct result of such illegal expulsion from the union, and plaintiff is entitled to reimbursement therefor at the hands of defendant association.

3. Plaintiff is entitled to be reinstated as a member in good standing of Local No. 222 of the United Garment Workers of America as though she had never been expelled, and to be restored to her employment with the Nanette Manufacturing Company, unless other good cause be shown.

Accordingly, we enter the following decree nisi:

### Decree

And now, to wit, September 18, 1945, the cause having come to be heard upon bill, answer and proofs, it is ordered, adjudged and decreed:

1. That the preliminary injunction enjoining and prohibiting defendants from excluding plaintiff, Eleanor Cheetham, from defendant union and from obtaining or demanding her discharge by defendant employers and from interfering with her employment with defendant employers, issued by this court on February 15, 1945, is made permanent.

2. That defendants, Local 222 of the United Garment Workers of America, its officers, trustees and members, are ordered and directed to recognize plaintiff as a member in good standing in the said Local 222 of the United Garment Workers of America and as such entitled to all the rights and privileges of such membership; that defendant employers restore plaintiff to full employment and maintain her in said employment unless other good and sufficient reasons exist for failing to do so.

3. That defendant Local 222 of the United Garment Workers of America, its proper officers, trustees or members, defendants, individually or collectively, pay said plaintiff within 30 days the sum of $104.

4. That the said Local 222 of the United Garment Workers of America, its officers, trustees or members, defendants herein, individually or collectively, shall pay all the costs of these proceedings.

The prothonotary will enter this decree nisi and give notice thereof to the parties or their attorneys, and unless exceptions thereto are filed within ten days, either party may present a form of final decree to be entered in the case.