**PHILADELPHIA LODGE NO. 5, FRATERNAL ORDER OF POLICE, and John J. Shaw, Gene A. Rapone, Joseph E. Lynch, Gregory E. Nicholas, Geraldine F. Pergolini, Daniel J. McCormick, Charles Gabrick, Anthony LaSalle, Thomas A. Hesson, Edward J. Kelly, William J. Karwoski, Timothy M. McGinn, James Hagan, Donald Finnegan, Shirley S. Williams, Steven O. Forester, John Iacona, Jr. and Thomas Garvey, Appellants,**

**v.**

**PENNSYLVANIA LODGE, FRATERNAL ORDER OF POLICE, and Francis P. Bascelli (Two Cases).**

**Appeal of PENNSYLVANIA LODGE, FRATERNAL ORDER OF POLICE and Francis P. Bascelli, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1995.
Decided June 6, 1995.

**194**

Howard Lebofsky, for appellants.

Gary M. Lightman, for appellees.

Before McGINLEY and NEWMAN, JJ., and DELLA PORTA, Senior Judge.

DELLA PORTA, Senior Judge.

Before this Court are the cross appeals of the Philadelphia Lodge No. 5, Fraternal Order of Police (Lodge 5) and the Pennsylvania Lodge, Fraternal Order of Police (state lodge) from an order of the Court of Common Pleas of Philadelphia County (trial court) which granted in part and denied in part Lodge 5's petition for a preliminary injunction.

Lodge 5 is the collective bargaining agent for the members of the City of Philadelphia Police Department. On March 30, 1993, an Act 111 interest arbitration award was issued setting forth the terms and conditions of employment for the City's police officers for

the years 1992–1996. Among the provisions of the award were a reduction in starting salaries for newly hired police officers, the placement of a cap on the City's contributions to health benefits, and the establishment of a Joint Trust Board, consisting of five trustees, four to be designated by the President of Lodge 5 and one by the City, to administer health care benefits.[1] Lodge 5 filed a petition to vacate the Act 111 arbitration award which was subsequently denied.

On April 6, 1993, the first general membership of Lodge 5 following the issuance of the Act 111 award was held. A motion was carried that LEHB and PFMA be retained as exclusive providers of medical coverage for police officers. After the meeting, officers of LEHB met on numerous occasions with Lodge 5 president John Shaw, Lodge 5 vice president Gene Rapone and Lodge 5 treasurer Anthony LaSalle in an effort to restructure the plan of benefits to minimize the impact of the award upon the membership.

LEHB subsequently negotiated a restructured plan of benefits with Blue Cross/Blue Shield, substantially different from that provided prior to the 1992–96 Act 111 award. The new plan required police officers to make an election between two health insurance programs that could dramatically affect the officer's individual and family health care benefits. LEHB held twenty-five group meetings with police officers and their families to explain the new plan and mailed to each police officer a letter explaining in detail the new health care program. Included with the letter was an election form that was to be completed and returned to LEHB by June 15, 1993.

Pursuant to the Act 111 award requirements, Shaw appointed Rapone, LaSalle, James Hagan and a paid employee of Lodge 5 to the Joint Trust Board. The Joint Trust Board negotiated a new health care program with Independence Blue Cross/Blue Shield.

1. Under the collective bargaining agreement which expired on June 30, 1992, police officers had a choice between two providers of health care: Law Enforcement Health Benefits, Inc. (LEHB) which offered traditional Blue Cross/Blue Shield indemnification health insurance, and Police and Fire Medical Association (PFMA)

which offered medical care through two clinics and a limited number of hospitals. As of June 30, 1993, approximately 60% of active members of the police department elected coverage under LEHB. (Notes of Testimony, State Lodge Hearing of August 25, 1993, Reproduced Record, pp. 750a–51a.)

The effect of this decision was to eliminate LEHB as a provider of health benefits for police officers. By letter dated June 18, 1993, the members of Lodge 5 were told that their LEHB elections forms were null and void and they were required to make another election by June 30, 1993.

On July 6, 1993, another regularly scheduled general membership meeting was held. Hagan, a member of the Joint Trust Board, announced that the members of that board had held an emergency meeting and that they had officially reinstated LEHB as the provider for Blue Cross/Blue Shield benefits. The Joint Trust Board delayed for almost three weeks completing the necessary forms by which Blue Cross/Blue Shield could again deal directly with LEHB. As a consequence of this action, there were several weeks during July, 1993 in which Blue Cross/Blue Shield declined to deal with LEHB.

Also at issue within this time frame was the proper amount of dues to be collected. At a meeting of the executive board of Lodge 5 on April 27, 1993, Kenneth Rocks, questioned why the dues which are a fixed percentage of base salary were not reduced when starting salaries were reduced.[2] Shaw ruled him out of order and would not permit him to speak. On April 29th, Rocks filed a grievance accusing Shaw of collecting illegally high dues. When Lodge 5 made no effort to process Rocks' grievance, he initiated proceedings with the state lodge.[3]

On July 6, 1993, another regularly scheduled general membership meeting of Lodge 5 was held. Rocks read a motion seeking to rescind the October, 1992 election of Shaw and the other members of the Lodge 5 executive board.[4] Shaw ruled that the motion

was out of order, and shortly thereafter declared the meeting adjourned. Rocks then put his motion to a vote and the motion was carried by a voice vote. Also, Rocks was elected to serve as interim chairman of the Board of Directors and Richard White was to serve as interim recording secretary.

On July 7, 1993, Lodge 5 and the members of the executive board petitioned for a temporary restraining order requesting the Court of Common Pleas to declare void the July 6th votes. After hearings, the trial court issued an order (1) declaring void Rocks' motion to rescind the October, 1992 election; (2) declaring void all action taken at the July 6th meeting after Shaw adjourned the meeting; (3) enjoining Rocks and White from acting in any Lodge 5 official capacity they did not hold before July 6th; and (4) directing the grievance committee of Lodge 5 to hold a hearing to consider the complaints of Rocks.

By letter dated July 7, 1993, the state lodge informed members of the executive board of Lodge 5 that three charges had been issued as a result of a series of grievances that had been filed against them. The letter further advised that the state lodge had formed a special investigation committee to investigate the facts surrounding the charges. The letter also advised that a hearing had been scheduled for July 14, 1993.

Lodge 5 again filed a petition for preliminary injunction and temporary restraining order seeking to enjoin the state lodge and its president, Francis P. Bascelli, from pursuing disciplinary action against the members of its executive board. The trial court denied Lodge 5's request for a temporary restrain-

---

2. Article 8, Section 2 of the Lodge 5 Constitution and By-laws provides that "[t]he active dues of an active member on active duty shall be one percent of the base pay of a patrol officer's Step 2 salary per month, payable in advance at the rate of 1/26 of the total amount per pay." As a result of the 1992–96 Act 111 award, the base pay of a Step 2 police officer was reduced from $32,427 to $27,103 per year.

3. On July 6, 1993, the chairman of the Lodge 5 grievance committee forwarded a letter to Rocks in which he advised him that the grievance would not be processed because Lodge 5 had appealed the Act 111 award.

4. The other members of the executive board were: Gene A. Rapone, vice president; Joseph E. Lynch, vice president; Gregory E. Nicholas, vice president; Geraldine F. Pergolini, vice president; Daniel J. McCormick, recording secretary; Charles Gabrick, financial secretary; Anthony LaSalle, treasurer; Thomas A. Hesson, trustee; Edward J. Kelly, trustee; William J. Karwoski, trustee; Timothy M. McGinn, trustee; James Hagan, trustee; Donald Finnegan, conductor; Shirley S. Williams, guard; Steven O. Forester, guard and John Iacona, Jr., chaplain.

ing order and Lodge 5 withdrew its petition for a preliminary injunction.

On July 14, 1993, an ad hoc panel of the members of the state lodge board of directors met informally and heard sworn testimony from several complainants regarding their allegations against individual members of the Lodge 5 executive board. As a result of testimony before the panel, the state lodge determined that there existed a sufficient basis to warrant the commencement of disciplinary proceedings by the state lodge against the said executive board members.

On July 21, 1993, the board of directors of the state lodge formally issued disciplinary charges against the said executive board members pursuant to Article XX, Section 2 of the state lodge's constitution and by-laws based on "extraordinary circumstances." Bascelli, with the consent of a majority of the state lodge board of directors, appointed a committee of five of its members to hear the matter. The committee served upon the members of Lodge 5 executive board written copies of the charges and specifications.

On July 30, 1993, Lodge 5 and the members of the executive board filed a second petition for preliminary injunction seeking to have the court enjoin any disciplinary action based on the July 21st charges. On August 17, 1993, the petition for preliminary injunction was denied.

The committee held a hearing on August 25–26 and reported its findings to the state lodge board of directors. On September 11, 1993, the state lodge board of directors announced the results of the committee's report and voted to impose discipline upon all charged individuals. Certain individuals were removed from office and expelled from

membership in the Fraternal Order of Police; certain others were removed from office and placed on probation from membership in the Fraternal Order of Police; and, others were reprimanded but not removed from office or Fraternal Order of Police membership. The vacancies in Lodge 5's executive board were filled by appointments made by the state lodge board of directors.

On September 13, 1993, Lodge 5 executive board filed a petition for a temporary restraining order and preliminary injunction seeking to enjoin the state lodge from enforcing disciplinary action against the executive board and to prevent the state lodge from controlling the operation of Lodge 5. In addition, a declaratory judgment was also sought that the members of the executive board were not guilty of misconduct. The trial court issued an order overturning the state lodge's appointment of interim officers. The court directed the highest ranking remaining officer in Lodge 5 to conduct all necessary business for Lodge 5, pending an election to fill the vacancies. The court further ruled that all individuals who had been disciplined by the state lodge were eligible to run for the interim offices and be elected.[5]

On December 7, 1993, the trial court issued an order granting the preliminary injunction in part and denying it in part together with a synopsis opinion. The court found extraordinary circumstances existed to justify the state lodge's intervention in two of the charges and affirmed the findings of guilt and the penalties imposed.[6] As to two other charges, the court found no exceptional circumstances which would justify the state lodge's intervention and declared that action taken pursuant to these charges null and void.[7] As to one charge, the trial court af-

---

5. On September 17, 1993, the election of interim officers was held by Lodge 5. None of the members of the executive board sought election.

6. Charge 4 concerns the actions of Shaw and Hagan in establishing the Joint Trust Board and the attempt to eliminate LEHB as a provider of Blue Cross/Blue Shield coverage. As the penalty for this charge, both Shaw and Hagan were removed from office and expelled from the Fraternal Order of Police.

Charge 7 concerns the failure of the executive board to reduce dues. The penalty imposed on Shaw, McCormick, Rapone, Gabrick and LaSalle

was removal from office and expulsion from the Fraternal Order of Police; the penalty imposed on Nicholas, Lynch, Geraldine Forester and McGinn was removal from office and placement on probation for two years without any right to hold office. Hesson, Kelly, Hagan, Karwoski, Finnegan, Steven Forester, Williams and Iacona were reprimanded.

7. Charges 1 and 3 relate to individual complaints by an individual member and were unrelated to the Act 111 interest arbitration award.

firmed all disciplinary action taken against Shaw and Rapone and declared all disciplinary action by the state board against the other members of the executive board null and void.[8]

The court also concluded that the executive board members failed to demonstrate that they did not receive a fair and impartial hearing before the state lodge committee and failed to demonstrate that they were not afforded due process. The court also determined that the state lodge exceeded its authority in naming replacement officers for Lodge 5 and enjoined the state lodge from any action in reliance thereon. Lodge 5 and the state lodge both appealed the trial court order.

On appeal, Lodge 5 argues that (1) the state lodge violated its by-laws in the manner in which it brought the charges; (2) the state lodge violated its by-laws in the manner in which it held the hearings; (3) the trial committee's findings were not supported by sufficient evidence; and (4) the state lodge violated its by-laws' requirement of equity and fairness.

■ Our standard of review for the grant or denial of a preliminary injunction is to determine whether there are any reasonable grounds for the trial court's decision or whether the rule of law relied on was erroneous or misapplied. *Willman v. Children's Hospital of Pittsburgh*, 505 Pa. 263, 479 A.2d 452 (1984). In considering Lodge 5's request for a preliminary injunction, the trial court applied the standard of review set forth in *Maloney v. United Mine Workers*, 308 Pa. 251, 162 A. 225 (1932). In reviewing discipline imposed by a labor organization upon its members, the Court's inquiry is limited to determining whether the procedure was in accordance with the organization's governing documents and "the courts may judge whether the exercise is arbitrary, and review the form of proceedings to see whether the tribunal has acted within its jurisdiction and in

the line of order, but cannot review the case on its merits." *Id.* at 257, 162 A. at 226.

The authority of the state lodge to impose discipline against an individual member and the procedure to be followed is found in Article XX, Section 2 of the state lodge's constitution and by-laws which provides, in pertinent part:

Discipline shall be initiated by the Pennsylvania State Lodge and imposed on an individual member, a subordinate lodge or state officer only in extraordinary circumstances where the member, lodge, or state officer has acted or failed to act in respect of a matter of direct and significant import to the Pennsylvania State Lodge or has violated this Constitution, the By–Laws or the Ritual of the Order.

(a) In the conduct of any investigation, hearing or trial of the complaint, of any Subordinate Lodge, member or members, the President with the consent of the Board of Directors, shall appoint a committee of not less than three (3), nor more than five (5) members from the Board of Directors, to act on same. They shall:

(1) Require complaint to be made under oath. . . .

(2) Service upon the Lodge, member or members, personally, or by registered mail, a written copy of complaint, with such specifications of facts as shall enable the Lodge, member or members to be placed on defense.

(3) Allow a period of not less than thirty (30) days after the service of copy of the complaint before hearing of trial of cause.

■ Lodge 5 first argues that the state lodge violated its by-laws by the manner in which it brought the charges. Specifically, Lodge 5 contends that charges were issued on July 7, 1993, prior to an investigation; the charges were not issued by the appropriate authority in that the special investigations committee exceeded the permissible size and its minority members were not appointed by

---

**8.** Charge 8 charges Shaw with failing to allow members to speak freely and participate in lodge affairs and charged both Shaw and Rapone with conspiring with the City of Philadelphia to eliminate LEHB and secretly agreeing to reduce starting salary of police officers. Charge 8 consists of numerous subparts with a penalty imposed for a finding of guilt for any subpart. Shaw was found guilty on 8 subparts of this charge and was removed from office and expelled for each charge. Rapone was found guilty on 3 subparts and was removed from office and expelled.

the state lodge vice president; the charges were not under oath and in writing; and, the charges were issued in the absence of extraordinary circumstances.

The members of the executive board were notified by Bascelli by letters dated July 21, 1993, that charges had been issued against them. According to the letters, the charges were issued as a result of the investigation made by the special investigation committee of the state lodge. We reject Lodge 5's argument that the charges were issued by the special investigation committee which is not authorized to issue charges. Further, there is no requirement in Article XX that an investigation to be made prior to the issuance of charges.

As to Lodge 5's contention that the charges were not under oath and in writing, we note that the purpose of this requirement is to "enable the charged party to be fairly apprised of the nature of the charge." We have reviewed charges 4, 7 and 8 and conclude that they were sufficient to inform Lodge 5 and the members of the executive board of the nature of the charges. The failure of the state board to provide a sworn, written complaint is at most a technical violation of the bylaws.[9]

The trial court addressed the question of whether extraordinary circumstances as follows:

The record clearly demonstrated allegations of double dealing on the part of the President of Lodge 5 and the members of the Executive Committee. These include: a failure to permit grievances to be resolved through internal dispute resolution mechanisms; allegations of utilization of the Act 111 Arbitration process for personal political gain in the previous FOP election; turmoil and dispute in the designation of entities for control of health benefits for members; significant misunderstanding as to members' benefits with the

distinct loss of benefits; and a failure to properly reduce dues. All of these allegations culminated in a large, well attended membership meeting that had to be abruptly terminated because of a refusal on the part of the membership present at the meeting to deal with any issue other than a vote on the removal of the President.

While the action of the Chair in terminating that meeting was affirmed as proper, clearly the events of the meeting, together with the attendant vote removing from office of then leadership of Lodge 5, created more than sufficient turmoil to permit the Pennsylvania Lodge Fraternal Order of Police to review the situation.

(Trial Court Opinion, pp. 18–19.) We agree with the trial court that extraordinary circumstances existed to justify the state lodge's intervention.

Lodge 5 next argues that the state lodge violated its by-laws in the manner in which it held the hearings. Specifically, Lodge 5 contends that the charges were heard by an improperly constituted trial committee; the trial committee was not an impartial tribunal; Lodge 5's right to confrontation was violated; and, it was unable to compel the attendance of witnesses and documents. We shall address each issue seriatim.

■ Lodge 5 contends that the trial committee was improperly constituted because the vice president did not appoint a minority of the committee in accordance with Article IX, Section 1 of the state lodge bylaws.[10] Article XX, Section 2(a) of the state lodge bylaws authorizes the president of the state lodge to appoint the trial committee. Although not applicable to the interpretation of a non-profit corporation's bylaws, we nevertheless look for guidance to the provisions of the Statutory Construction Act of 1972 (Act), 1 Pa.C.S. §§ 1501–1978. Section 1933 of the

9. In its brief, Lodge 5 conceded that the charges and specifications were based on written complaints filed with the state lodge prior to the July 14th hearing and sworn oral statements made at the hearing.

10. That Section provides:

The Vice-President shall preside at meetings of the Board of Directors in the absence of the President and shall otherwise generally perform the duties of the President during his absence. He shall also perform such other duties as shall be ordered by the Board of Directors. He shall appoint the minority of all Committees.

Act, 1 Pa.C.S. § 1933, provides that if two provisions of a statute are in conflict and that conflict is irreconcilable, a special provision prevails over a general provision. Under this reasoning, we conclude that Article XX, Section 2(a), as a special provision specifically relating to the composition of the trial committee, prevails over Article IX, Section 1, a general provision, and that the state lodge president had the authority to appoint the members of the trial committee.

■ Lodge 5 also contends that the trial committee was improperly constituted because the committee was appointed without the unanimous consent of the board of directors. Article XX, Section 2(a) provides that "the President with the consent of the Board of Directors shall appoint" the trial committee. This provision contains no requirement that consent be unanimous and we decline to read into that provision such a requirement.

■ We next address Lodge 5's allegations that its due process rights were violated in the conduct of the hearing. A due process standard is incorporated into the state lodge's bylaws in Article XX, Section 6(a).[11] The elements of procedural due process include adequate notice, an opportunity to be heard and the opportunity to defend oneself before a fair and impartial tribunal having jurisdiction over the matter. *Lee Hospital v. Cambria County Board of Assessment Appeals,* 162 Pa.Commonwealth Ct. 38, 638 A.2d 344 (1994). Due process further requires an opportunity to confront and cross examine adverse witnesses. *Phillips v. Pennsylvania Housing Finance Agency,* 123 Pa.Commonwealth Ct. 525, 554 A.2d 607 (1989).

Lodge 5 argues that the trial committee was not an impartial tribunal because three members of that committee served on the special investigation committee. Lodge 5 contends that this was a commingling of adjudicative and prosecutorial functions which violates due process. In support of this argument, Lodge 5 cites *Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992). In that case, the State Board of Medical Examiners determined that sufficient evidence existed to initiate disciplinary action against a physician. A hearing examiner held lengthy hearings and issued an adjudication and order directing that the physician's license be suspended for a period of five years. The physician then filed an application for review to the State Board of Medical Examiners which ordered the permanent revocation of his license. Three Board members who had voted to initiate prosecution participated in the meeting at which the physician's license was revoked.

On appeal, the Supreme Court held that the procedures followed by the Board created an unconstitutional commingling of prosecutorial and adjudicatory functions in a single entity. The Court stated:

> Whether or not any actual bias existed as a result of the Board acting as both prosecutor and judge is inconsequential; the potential for bias and the appearance of non-objectivity is sufficient to create a fatal defect under the Pennsylvania Constitution.

*Id.* at 458, 605 A.2d at 1210.

The Supreme Court also stated:

> What our Constitution requires, however, is that if more than one function is reposed in a single administrative entity, walls of division be constructed which eliminate the threat or appearance of bias. As then-Justice Nix stated so percipiently in concurrence in *American Bankers,* a 'mere tangential involvement' of an adjudicator in the decision to initiate proceedings is not enough to raise the red flag of procedural process. [*Com. Dept. of Ins. v.*] *American Bankers* [*Ins. Co. of Fla.*], 478 Pa. [532] at 545, 387 A.2d [449] at 456 [ (1978) ]. Our constitutional notion of due process does not require a *tabula rasa.* [citation omitted]. However, where the very entity or individuals involved in the decision to prosecute are 'significantly involved' in the adjudicatory phase of the proceedings, a violation of due process occurs. *American*

11. That Section provides: "In any respect to any disciplinary hearing conducted by any lodge of the Order, due process shall be afforded the parties thereto."

*Bankers,* 478 Pa. at 546, 387 A.2d at 456. (Nix, J., concurring). . . .

*Id.* at 546, 605 A.2d at 1209–10.

■ In the case before us, as a result of the sworn testimony before the special investigation committee, the state lodge determined that there existed a sufficient basis to warrant the commencement of disciplinary proceedings. (Finding of Fact No. 82.) Thus, the decision to prosecute was not made by the special investigation committee. The charges were issued under the signature of Bascelli, the state lodge president, and were then heard by the trial committee. Lodge 5 failed to prove that the three members of the special investigations committee who were also members of the trial committee were involved in the issuance of the charges. Their participation on the special investigation committee appears to be a "tangential involvement," which the Supreme Court determined in *Lyness* to not violate due process.[12] The type of commingling of functions found by the Supreme Court in *Lyness* to violate due process is not present here.[13]

Lodge 5 also alleges a violation of the right of confrontation in that it did not know the identity of the grievants until the trial committee hearings on August 25 and that certain documents were available to the trial committee in advance of the hearings.[14] Lodge 5 also contends that it was unable to compel the attendance of witnesses or the production of documents. Lodge 5's arguments in these matters are speculative at best, and it fails to articulate how it has been prejudiced in defending against the charges.[15]

Next, Lodge 5 argues that the trial committee's findings were not supported by sufficient evidence. The parties agree that the appropriate standard of judicial review is that articulated in *International Brotherhood of Boilermakers v. Hardeman,* 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971).

> Section 101(a)(5) of the [Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(5) ] guarantees union members a 'full and fair' disciplinary hearing, and the parties and the lower federal courts are in full agreement that this guarantee requires the charging party to provide some evidence at the disciplinary hearing to support the charges made. This is the proper standard of review. We have repeatedly held that conviction on charges unsupported by any evidence is a denial of due process.

*Id.* at 246, 91 S.Ct. at 617.

We have reviewed the findings of the trial court and we agree with the trial court that "some evidence" exists to support the following charges: Charge # 4, that Shaw and Hagan violated their oath as officers of Lodge 5 in attempting to eliminate LEHB as a provider of health benefits; Charge # 7 that the members of the executive board violated their oaths as officers of Lodge 5 in failing to reduce member dues; and, Charge # 8 that Shaw and Rapone violated their oaths as officers of Lodge 5 in proposing

---

**12.** *Lyness* construed due process requirements under the Pennsylvania Constitution. In *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the United States Supreme Court considered whether a combination of investigative and adjudicative functions violated due process under the Federal Constitution. In *Withrow,* the Wisconsin Examining Board held an investigative hearing to determine whether a physician had engaged in certain prohibited acts. The Board then scheduled a hearing to determine, based on the evidence adduced at the investigative hearing, whether the physician's license would be suspended. The Supreme Court held that "[t]he mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing." *Id.* at 55, 95 S.Ct. at 1468. Thus, under either standard, the FOP's argument fails.

**13.** Lodge 5 also alleges that the members of the trial committee were biased against the members of the executive board. Lodge 5 does not support this argument with facts and we will not consider it.

**14.** Lodge 5 does not allege that it was prevented from questioning witnesses against it.

**15.** For example, Lodge 5 contends that it attempted to call Bascelli as a witness on the morning of August 26 without success. "His testimony regarding the procedural defects of these disciplinary hearings *might easily have made a difference* in the committee's recommendations and findings. . . ." (Lodge 5's brief at 23–24, emphasis added.)

certain features of the Act 111 arbitration award.

█ Finally, Lodge 5 argues that the state lodge violated the requirement that discipline be imposed in such a manner as to afford equity and fairness to all parties. Lodge 5 argues that the state board selectively charged individuals so that it could gain control of the executive board and imposed penalties that were disproportionate to the offenses. Article XX, Section 6(c) of the state lodge bylaws provides that "[d]iscipline may be imposed upon a member of lodge for any violation of the good of the order ..." Thus, the decision to impose discipline and extent of the discipline imposed are within the discretion of the state lodge and the trial court did not err in declining to consider the propriety of the level of discipline imposed.

█ The state lodge filed a cross-appeal in this case but has not presented any arguments in its brief in that regard. Accordingly, we deem the state lodge's appeal abandoned. *See Commonwealth v. Rodgers,* 413 Pa.Superior Ct. 498, 605 A.2d 1228 (1992) (an issue is deemed abandoned where it has been identified on appeal but not properly developed in the appellant's brief); *Commonwealth v. Nelson,* 389 Pa.Superior Ct. 417, 567 A.2d 673 (1989) (issues identified on appeal but unsupported by argument in brief are deemed abandoned).

The order of the trial court is affirmed.

### ORDER

AND NOW, this 6th day of June, 1995, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.