**Al O. PLANT, Plaintiff,**

v.

**LOCAL UNION 199, LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, Catalytic Construction Company, a corporation of the State of Delaware, and William A. Park, Defendants.**

Civ. A. No. 3976.

United States District Court,
D. Delaware.

March 23, 1971.

1022

Jacob Kreshtool and Sheldon N. Sandler, of Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiff.

Harvey B. Rubenstein, Wilmington, Del., for defendant Local Union 199, Laborers' International Union of North America.

David A. Drexler and Richard S. Paul, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant Catalytic Const. C.

OPINION

CALEB M. WRIGHT, Chief Judge.

Plaintiff Plant is a member of the defendant union, Local Union 199, Laborers' International Union of North America ("the union"), and defendant Park is the Business Manager thereof. Plaintiff was formerly an employee of Catalytic Construction Company ("Catalytic"), but was discharged from this job during the episode that gave rise to this action.

The case comes before the Court on plaintiff's application for a prelimi-

nary injunction and the defendant's separate [1] motions to dismiss.[2] The parties have also raised the further question of the Court's jurisdiction to hear the suit, and the Court raised the issue of the applicability of the doctrine of primary jurisdiction of the National Labor Relations Board.[3] The Court intends to deal with all of these problems as briefly as possible.

The complaint in this action alleges that plaintiff was employed for more than two years prior to December 26, 1969, as the Toolroom Attendant [4] for Catalytic at its River Road-Avisun job site near New Castle, Delaware.[5] During December plaintiff and Catalytic had a disagreement over plaintiff's rights to overtime. Specifically, plaintiff alleges that the company requested that he share "his" overtime equally with another employee who assisted him in the toolroom. Plaintiff further alleges that he then went to his union and particularly defendant Park and asked for assistance to mediate and settle this dispute. According to plaintiff, the union refused.

Thereafter, on at least two separate occasions, persons used tools from the toolroom without plaintiff being present thus depriving plaintiff of substantial overtime pay. Plaintiff believed this practice to be in violation of the contract governing his employment and on each occasion requested that the union take action to process this grievance. The union refused to do so or at least took no action.

On December 26, 1969, Catalytic transferred plaintiff out of the toolroom to a lower paying job "in the field." Plaintiff agreed to accept this work, but on December 30, 1969, he was laid off due to a one-man "reduction in force." Again plaintiff says that he sought the assistance of his union, but Park refused to help—instead, Park preferred union charges against him for interfering with the proper conduct of the union's business and having filed a lawsuit in violation of the union constitution.

1. Mr. Park and the union are represented by the same counsel, and the complaint alleges that at all relevant times Park was acting within the scope of his employment. Union counsel argues that since no damages can be recovered against defendant Park, see § 301(b) of the Labor Management Relations Act, 29 U.S.C. § 185(b), and Williams v. Pacific Maritime Assoc., 421 F.2d 1287 (9th Cir. 1970), the complaint should be dismissed at least as against him. Whether or not § 301(b) bars any recovery from defendant Park [e. g., the affidavit submitted to the Court by Park does not allege that he is a "member" of defendant union as required by § 301(b)], it does not necessarily follow that the complaint against Park should be dismissed. If any injunctive relief is to be granted in this case, it may be helpful if Park is a party thereto.

2. Catalytic also filed a motion to strike certain portions of the complaint, although this motion was not briefed or argued by the other parties. Inasmuch as plaintiff's counsel offered to amend the complaint to obviate several of the contentions of Catalytic in its motion to strike, the Court will deny this motion without prejudice to the renewal of it after plaintiff's amended complaint is filed.

3. Counsel for plaintiff represented to the Court at oral argument that plaintiff had at one time filed a complaint with the NLRB but that it was withdrawn before the Regional Counsel's office could act upon it and prior to the filing of this action.

4. The multi-employer collective bargaining agreement pursuant to which plaintiff was employed since it was executed on June 23, 1969, states under Article 6:

Toolroom Attendant: The issuing of tools and equipment to all crafts and the light maintenance thereof; Maintaining of inventory and record keeping thereof. Toolroom Attendant shall remain on the job as long as a craft or crafts are using tools issued from the toolroom.

See page 2 of Exhibit "B" to Affidavit of W. David McIntire, Manager of Labor Relations of Catalytic, filed October 23, 1970.

5. Counsel have represented to the Court that this job is now terminated; thus, reinstatement is not at issue in the instant litigation.

Plaintiff denied both of these charges. After an undescribed internal union hearing, plaintiff was fined.

Plaintiff alleges that Catalytic, the union and Park conspired together to arrange the denial of his overtime, his transfer and dismissal in violation of his contractual rights and the union's duty of fair representation. Plaintiff seeks money damages for his injuries in this regard.

Second half of plaintiff's stated claim concerns only the actions of the union and Park after plaintiff's dismissal from Catalytic. The union operates a job referral system apparently very similar to, or actually, a "hiring hall." Plaintiff alleges that the union and particularly defendant Park have " * * * actively and hostilely discriminated against him in the operation of the union job referral system, in violation of their duty of fair representation, so that plaintiff is not assigned jobs on an equal basis with other, more favored members. * * *" Complaint, ¶19. Injunctive relief is sought (as well as damages for past injury) to prohibit the further discrimination against plaintiff in the assignment of jobs.

These defendants, of course, deny that they have so discriminated against plaintiff in this regard and have submitted the affidavit of defendant Park which tends to show that the alleged discrimination against plaintiff is, in fact, the result of the uniform and equitable operation of the legitimate rules governing the selection of members for jobs under the job referral system.

Plaintiff alleges that the Court has jurisdiction of this action under § 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a) and § 101 of the Labor-Man-

agement Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411. Of course, § 101 of the LMRDA has nothing to do with jurisdiction, but § 102 does give a federal district court jurisdiction of suits by persons whose § 101 rights have been infringed.

Under the Court's interpretation of the complaint—and it certainly requires some interpretation in order to relate it to plaintiff's rights under federal labor laws—plaintiff asserts that his federal rights were violated in four separable particulars: (1) the company violated a contractual provision applicable to plaintiff and fired him as a result of his opposition all with the active approval or assistance of the union and/or Park; (2) the union violated its duty of fair representation, for example, by refusing to process plaintiff's grievance against Catalytic; (3) the union then illegally fined plaintiff; and (4) the union then discriminated against plaintiff in the operation of the job referral system and continues to do so as a result of the plaintiff's having asserted and continuing to assert his contractual rights and his opposition to the union's position on his claims.

■ This stated, some of the jurisdictional questions can be promptly disposed of. It is quite apparent that this Court has jurisdiction of the contract claim (number 1 supra) under § 301 of the LMRA. See, e. g., Vaca v. Sipes, 386 U.S. 171, 186–187, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Catalytic's argument that the plaintiff somehow lacks "standing" to raise the contract claim because the disputed contractual rights are not "personal" to him, entirely misconceives the function of the standing doctrine.[6] The argument that the con-

---

6. See this Court's summary of some recent standing caselaw in State of Delaware et al. v. Pennsylvania New York Central Transportation Co., 323 F.Supp. 487 (D. Del.1971). Under any reasonable interpretation of the requirements of the standing doctrine, an individual union member must have standing to challenge the union's and management's shared interpre-

tation of a contractual provision that has resulted in that individual "losing" substantial overtime and being transferred to a lower paying job. Cf. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Smith v. Evening News Assoc., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).

tractual language under which plaintiff sues does not support his position that *he* was entitled to all overtime is an argument that obviously goes to the merits of the contractual claim, not to the jurisdiction of this Court to hear it. Cf. Smith v. Evening News Assoc., 371 U.S. 195, 200–201, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).

■ *Vaca v. Sipes* also makes it quite clear that the Court has jurisdiction of plaintiff's second claim that the union violated its duty of fair representation of him in conspiring with the company and refusing to process his grievance, although the union is perhaps correct that the duty of fair representation is not relevant to plaintiff's third and fourth claims. Cf. Local 100, United Assoc. of Journeymen v. Borden, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638 (1963).

It is equally apparent that the Court has jurisdiction of the third claim that the plaintiff was illegally fined [7] under § 102 of the LMRDA. As the Court reads the Complaint, plaintiff has alleged, however inartfully, that he was fined because he asserted his § 101 right to demand that the union act in his behalf and his right to file unfair labor practice charges against the union.[8] If there was ever any doubt that this type of action was within the § 102 jurisdiction of a federal district court, it was dispelled by the recent Supreme Court decision in Internat'l Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971).

■ As *Hardeman* indicates, the real jurisdictional question in cases such as the instant one is that of the *primary* jurisdiction of the National Labor Relations Board, a question which none of the parties addressed in their briefs or oral arguments. *Hardeman* firmly establishes that the doctrine of primary jurisdiction does not apply to an action based upon a union's violation of a member's rights under § 101(a) (5), and this Court can see no reason why this ruling would be inapplicable to a violation of plaintiff's rights under § 101(a) (2) and (4). This extension of the *Hardeman* holding, if it is an extension, is particularly modest when it is understood that these alleged violations of § 101(a) (2) and (4) can be adjudicated in terms of whether or not the hearing given to the plaintiff on the union charges was "full and fair" in terms of § 101(a) (5). Indeed, many violations of the balance of § 101 will come before courts in an internal union disciplinary hearing context.

The *Hardeman* Court indicated that this Court's proper role is to analyze suits such as this in terms of the purposes of the primary jurisdiction doctrine in order to determine whether the expertise and uniformity of coverage of the NLRB indicates that judicial deference to that administrative agency is the appropriate course of action. Quoting from Mr. Justice White's opinion in Local Union No. 189, Amalgamated Meat Cutters v. Jewel Tea Co., Inc., 381 U.S. 676, 684–685, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965) the *Hardeman* Court stated at 4277:

'The doctrine of primary jurisdiction * * * applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within

---

7. Plaintiff may not claim to have been illegally fined; the complaint is quite ambiguous on this point. Complaint, ¶ 16; Plaintiff's Brief, at 4.

8. The parties have not taken any position on whether the union's procedures are in compliance with the four-month proviso of § 101(a) (4) of the LMRDA.

Plaintiff has alleged that he has exhausted all internal union procedures and that, in any event, it would be futile to pursue internal remedies because defendant Park controls the union and is manifestly hostile to plaintiff and his claim. Complaint, ¶ 17. See N. L. R. B. v. Ind. Union of Marine & Shipbuilding Workers, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968).

the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.' United States v. Western Pac. R. Co., 352 U.S. 59, 63–64 [77 S.Ct. 161, 1 L.Ed.2d 126]. The doctrine is based on the principle 'that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over,' Far East Conference v. United States, 342 U.S. 570, 574, [72 S.Ct. 492, 96 L.Ed. 576] and 'requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme,' United States v. Philadelphia Nat. Bank, 374 U.S. 321, 353. [83 S.Ct. 1715, 10 L.Ed.2d 915]

In *Jewel Tea* the Court held that the primary jurisdiction doctrine did not require court abstention for a NLRB determination of whether a certain contract provision was a mandatory subject of bargaining under § 8(d) of the National Labor Relations Act ("NLRA"), 29 U.S.C. 158(d). Similarly, the *Hardeman* Court stated:

Those factors suggesting that resort must be had to the administrative process are absent from the present case. The fairness of an internal union disciplinary proceeding is hardly a question beyond 'the conventional experience of judges,' nor can it be said to raise issues 'within the special competence' of the NLRB. See N. L. R. B. v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 181, 193–194, [87 S.Ct. 2001, 2007, 2013–2014, 18 L.Ed.2d 1123] (1967). As we noted in that case, the Eighty-Sixth Congress which enacted § 101(a) (5) was 'plainly of the view' that the protections embodied therein

were new material in the body of federal labor law. 388 U.S. at 194 [87 S.Ct. at 2014]. And that same Congress explicitly referred claims under § 101(a) (5) not to the NLRB, but to the federal district courts. This is made explicit in the opening sentence of § 102: 'Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate.' Of course, '[t]he purpose of Congress is the ultimate touchstone.' Retail Clerks International Ass'n, Local 1625, AFL–CIO v. Schermerhorn, 375 U.S. 96, 103 [84 S.Ct. 219, 223, 11 L.Ed.2d 179] (1963). And in § 102 Congress has clearly indicated a purpose to refer claims regarding violation of § 101(a) (5) to the district courts. 91 S.Ct. at 613.

In the instant case, the Court concludes that the primary jurisdiction doctrine, as stated by the Supreme Court in *Hardeman*, does not require this Court to defer to the NLRB on plaintiff's third claim concerning his § 101 rights. The question of whether the union has violated § 101(a) (2), (4) or (5) in this case presents relatively straightforward legal issues well within the "conventional experience of judges." It is difficult to imagine what "special competence" or discretion the NLRB might bring to bear. The plaintiff's fourth claim, however, presents a closer question.

 Plaintiff's fourth claim—that the union and Park have discriminated against him, and continue to do so, in the operation of the union's job referral system—alleges the type of conduct that is normally considered to be, or at least arguably to be, an unfair labor practice by the union under §§ 8(b) (1) (A) and 8(b) (2) of the NLRA, 29 U.S.C. §§ 158(b) (1) (A), 158(b) (2).[9] See In-

---

9. Beyond the original intent of Congress to eliminate coercive organizational campaign tactics and union control over employment, see N. L. R. B. v. Allis-Chalmers

ternat'l Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971). Thus, under the doctrine of San Diego Building Trades Council v. Garman, 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959) "the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of * * * interference with national policy is to be averted." *Garmon* was followed in Local 100, United Assoc. of Journeymen v. Borden, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638 (1963) in which a local business agent refused to refer an individual who had incurred his wrath to a particular job for which that individual had been requested—perhaps because he had violated a union rule against directly soliciting contractors. The Court there determined that the matter was within the exclusive jurisdiction of the NLRB because the union's actions were arguably in violation of §§ 8(b) (1) (A) or 8(b) (2) of the NLRA and because the union's actions were arguably protected activities within the meaning of § 7 of that Act. Id. at 694–696, 83 S.Ct. 1423, 10 L.Ed.2d 638. Thus, the expertise of the NLRB was called for.

■ The Court is disinclined to follow this precedent in the instant case, however, for three reasons. First, the doctrine of primary jurisdiction has suffered a marked decline in the days since *Garmon* and *Borden*.[10] Second, the purposes of the primary jurisdiction doctrine do not argue strongly for declining jurisdiction in this case. And third, this phase of plaintiff's claims is reasonably closely entwined with the other matters that are clearly within this Court's jurisdiction.

■ The purposes of the primary jurisdiction doctrine have been noted briefly in this opinion—uniform enforcement, the broad scope Congress intended for administrative expertise, and the fact of judicial inexperience in the area of NLRB policies and rules.[11] None of these purposes lead the Court to suspect that the job referral discrimination aspect of this case would be more satisfactorily handled if plaintiff were required to take this aspect of the case to the NLRB. Plaintiff does not allege some subtle form of hiring hall procedure that operates to exclude him from referrals requiring NLRB expertise to ferret out; he alleges blatant and intentional discrimination and claims to be able to prove it. There is little doubt that such discrimination, if proved, would be dealt with similarly by the Court and the NLRB. At the same time, there is no reason for the Court to feel that the trial and decision of this case will severely strain the Court's competence or dramatically depart from its experience.

Moreover, it seems a pointless waste of time and governmental resources to require plaintiff to fragment his claims against the union into two separate proceedings. If plaintiff is correct in his allegations, he has been abused by his

Mfg. Co., 388 U.S. 175, 184–191, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967), the scope of these subsections is somewhat unclear. The basic notion of restraints on union power to control individual union members or non-member employees certainly includes discrimination in job referrals or a breach of the union's duty of fair representation as alleged in plaintiff's second claim. See generally, Vaca v. Sipes, 386 U.S. 171, 176–178, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) ; Note, Fair Representation and Union Discipline, 79 Yale L.J. 730 (1970).

10. This point need not be elaborated. To some extent, *Vaca*, *Hardeman* and *Smith*

represent inroads on the broad, uncompromising language of *Garmon*. These later cases give full recognition to the several statutes granting jurisdiction to district courts to resolve disputes that also involve unfair labor practices. It was perhaps inevitable that *Garmon* should be circumscribed. See, M. Sovern, Section 301 and the Primary Jurisdiction of the NLRB, 76 Harv.L.Rev. 529, 536 (1963) ; L. Jaffe, Judicial Control of Administrative Action 135–136 (1965).

11. See generally L. Jaffe, Judicial Control of Administrative Action 121–151 (1965).

union's continuous course of conduct in this affair. When proofs will thus overlap and the proof on one claim may assist the Court or jury in understanding the proof on the other claims, the Court can see a kind of pendent jurisdiction argument favoring retention of the claim although it might more properly belong in the jurisdiction of another forum.[12] Cf. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ This resolution of the jurisdictional question in plaintiff's favor, however, contrasts with the Court's conclusion on the merits of the motion for preliminary injunction. The Court here decides that the preliminary injunction shall not issue because plaintiff has failed to carry his burden of demonstrating to the Court's satisfaction that he will probably be able to show that he has been discriminated against in the operation of the job referral system.[13]

It would be tedious to set down here a full summary of the matters alleged in the affidavits submitted to the Court on this question. Plaintiff's affidavit and those of the three other union members filed in support of plaintiff's allegation of discrimination[14] in this action all allege in relatively conclusory terms that other men who were lower on the rotation list got jobs before plaintiff and that Park is and was discriminating against plaintiff in the operation of the job referral system. Mr. Park's affidavit, however, explains the job referral system and claims that it could, and did in fact, legitimately happen that a man lower on the list would be referred for a job before another who is higher on the list. For example, Paul J. Burns' affidavit states that certain union members who signed the referral list after plaintiff went out on jobs before plaintiff. Mr. Park's affidavit explains each instance (from his records apparently) as either a mistake on Mr. Burns' part or a legitimate exception to the first-come-first-serve rule—e. g., employer requested a certain member, employer requested a qualified foreman, "favored" member had (in undiscovered violation of union rules) kept his name on the list when currently employed and was thus referred shortly after the end of the first job, or plaintiff was not present when his name was called for a referral. Mr. Park's affidavit flatly denies discriminating against plaintiff and also alleges that all of the affiants who state that he has so discriminated—including plaintiff—have unsuccessfully opposed him in union elections.

Thus, it appears from the present record that instances that plaintiff and others perceive as discrimination by the union may be adequately explained in terms of the operation of rules that plaintiff has not attacked as unreasonable or discriminatory in this action. At

---

12. Some courts and commentators have concluded that the doctrine of primary jurisdiction requires that when an administrative agency has primary jurisdiction courts are totally bereft of jurisdiction. The better view seems to be to the contrary at least in the labor law area. As Professor Jaffe puts it:

The Supreme Court has now wisely decided to allow the exercise of court jurisdiction despite the presence of potential NLRB jurisdiction at least in the absence of 'serious problems' of conflict.

Id. at 136. See Smith v. Evening News Assoc., 371 U.S. 195, 197–198, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).

13. There is also some question in this case of whether plaintiff has shown that the damage done him is irreparable. Plaintiff alleges that because of his unemployed status during 1970, his family was forced to go on welfare. This may be irreparable injury in some cases, but plaintiff here has made no allegation that would support this conclusion. Frankly, it would seem that money damages would compensate for any past harm that the discrimination caused.

There is a further question of whether the discrimination has been or could be shown to be the cause of plaintiff's irreparable injury (if it is irreparable).

14. See affidavits of Paul J. Burns, Sam Garrett and Christopher Scrivens all filed October 19, 1970, and the affidavit of Al O. Plant attached to Motion for Preliminary Injunction.

least, it is clear that plaintiff has not sustained his burden of proving discrimination sufficient to permit the issuance of an injunction.

Catalytic and the union have also moved for dismissal for failure to state a claim upon which relief can be granted. Their main argument on this motion is basically that the collective bargaining agreement under which plaintiff was employed with Catalytic gives him no right to the job of Toolroom Attendant, no right to any job at all, and especially no right to insist on remaining on the job during overtime hours.

 This motion can be swiftly disposed of, but not by the restatement of thunderingly obvious fundamentals of labor law. Of course, the agreement does not give plaintiff a right to a job or a right to the job of Toolroom Attendant—it does not give him a right to be paid a certain hourly wage either. But the contract does provide that the Toolroom Attendant, whoever he may be, shall be paid a certain wage, and plaintiff has a right to demand that wage while he is the Toolroom Attendant. The language describing the duties of the Toolroom Attendant could well be construed to support plaintiff's position on the contract claim. That is, although plaintiff has no right to be the Toolroom Attendant (which he apparently recognized when he accepted the transfer to the field), as long as he *is* the Toolroom Attendant he may have a right to be on duty as long as tools are being used from the toolroom. That is plaintiff's argument on the merits—and the Court does not now decide the merits—which cannot be defeated with bland generalizations about collective bargaining agreements not giving individual workers any personal rights.

The defendants' other contentions that plaintiff has otherwise failed to state a claim are also without merit. Plaintiff may have stated his claim with little skill; he has not proved it and may not be able to prove it—but he has stated a claim upon which relief can be granted.

In summary, the motions presently before the Court are disposed of in the following manner: (1) the application for a preliminary injunction is denied; (2) the motions to dismiss for lack of jurisdiction and for failure to state a claim are denied; and (3) the motion to strike is denied without prejudice to defendants' right to renew it after plaintiff has filed his amended complaint.

The foregoing shall constitute the Court's findings of fact and conclusions of law for purposes of Rule 52(a) of the Federal Rules of Civil Procedure.

Submit order in accordance herewith.