WILMINGTON HOUSING AUTHORITY, a public body corporate and politic organized and existing under the laws of the State of Delaware, Plaintiff,

v.

ROCKY MARCIANO CONSTRUCTION COMPANY, a New Jersey Corporation, et al., Defendants.

Civ. A. No. 74–41.

United States District Court, D. Delaware.

Feb. 27, 1975.

As Corrected March 21, 1975.

———◆———

Jerome O. Herlihy, Herlihy & Herlihy, Wilmington, Del., for plaintiff.

David Roeberg, Roeberg & Agostini, Wilmington, Del., for defendants Rocky Marciano Const. Co. and P. H. Coustenis, Inc.

John M. McDonald, Asst. U. S. Atty., Wilmington, Del., for defendant United States Dept. of HUD.

Jacob C. Kellem, Connolly, Bove & Lodge, Wilmington, Del., for defendant Gary Falk.

Paul H. Spiller, Kimmel, Spiller & Bradley, Wilmington, Del., for certain of the other defendants.

## OPINION

EDWIN D. STEEL, Jr., Senior Judge:

The case is before the Court upon a motion to dismiss the complaint filed by the United States Department of Housing and Urban Development (HUD), one of the defendants. The complaint alleges the following facts:

Plaintiff, Wilmington Housing Authority (WHA), is a public body corporate and politic organized and existing under the laws of Delaware, and is the recipient of Federal funds for expenditure under the United States Housing Act of 1937, 42 U.S.C. § 1416. Defendants are Rocky Marciano Construction Company (Rocky Marciano) which, as prime contractor, contracted with WHA for the construction of certain improvements on properties of the WHA in Wilmington,[1] P. H. Coustenis, Inc., T/A Tenibac Co. (Tenibac), which subcontracted with Rocky Marciano for the installation of certain improvements, Robert Ketchum, d/b/a Blackbird Woodwork, which subcontracted with Tenibac to install certain of the improvements required by the prime contract and by the Rocky Marciano subcontract, twenty-three laborers and mechanics who performed services for one or more of the above defendant contractors in connection with the installation of the improvements, and HUD.

The complaint alleges that all of the defendants have conflicting and adverse claims to $32,058 which plaintiff has refrained from distributing because of a directive which it received from HUD on February 5, 1973, to make no payments therefrom to the prime contractor, Rocky Marciano. The complaint further alleges that plaintiff is an innocent stake holder and it makes no claim to the fund.

The complaint prays that the defendants be required to interplead and settle among themselves their rights to the fund, that plaintiff be authorized to deposit the fund with the Clerk of the Court, that upon such deposit the plaintiff be discharged from any and all liability for or by reason of the fund, and that plaintiff be awarded costs and counsel fees out of the fund. Before HUD filed its motion to dismiss, WHA had deposited with the Clerk of the Court $32,058, without objection by any of the parties, pursuant to a Court order.

Jurisdiction of the interpleader action exists under 28 U.S.C. § 1335. HUD is subject to suit under 28 U.S.C. § 2410 (a)(5).

The motion to dismiss is based upon the alleged ground that "plaintiff[s] and the other defendants have failed to exhaust their administrative remedies as provided by the contract and by law."

### Contractual Obligation to Seek Administrative Remedy

HUD points to two contractual provisions under which it contends plaintiff, WHA, bound itself to settle wage disputes administratively. The first is in the contract between HUD and WHA. Section 119(B) reads:

"All disputes concerning the payment of prevailing wage rates or classifications arising under this Contract or under any contract identified in subsection (B) of Sec. 115 involving (1) significant sums of money, (2) large groups of employees, or (3) novel or unusual situations shall be promptly reported to the Government for decision or, at the option of the Government, referral to the Secretary of Labor. The decision of the Government or the Secretary of Labor, as the case may be, shall be final. Each contract identified in subsection (B) of Sec. 115 shall embody the provisions of this subsection."

---

1. Presumably, although this fact is not alleged in the complaint, the Federal funds received by WHA from HUD were used in whole or in part in the construction of the improvements.

Embraced within the terms of subsection (B) of section 115 of the HUD-WHA contract is the WHA-Rocky Marciano contract. However, the terms of section 119(B) of the HUD-WHA contract were not included in the Rocky Marciano contract as section 119(B) required. Another provision, section 26, however, was in the WHA-Rocky Marciano contract and plaintiff argues it also committed WHA to seek an administrative determination of the wage dispute. Section 26 reads:

"All questions arising under this Contract relating to the application or interpretation of the Anti-Kickback Act or Sec. 16(2) of the Act shall be referred to the Secretary of Labor of the United States for ruling or interpretation, and such ruling or interpretation shall be final." [2]

Section 26 does not relate to "wage disputes concerning the payment of prevailing wage rates" which is the subject of section 119(B) of the HUD-WHA contract. Although the language of section 26—"All questions arising under this Contract relating to the application or interpretation of . . . Sec. 16(2) of the Act" [3]—is broad, it was not intended to embrace "wage disputes". This is shown by the separate treatment accorded the two subjects in sections 119 (B) and (C), respectively of the HUD-

WHA contract, and in § 5.11(b) and § 5.12 of the Regulations of the Housing Act of 1937 set forth in 29 C.F.R. Consequently, section 26 of the Rocky Marciano contract is not material to the present wage dispute, although section 119(B) of the HUD-WHA contract does bear upon it. That section provides for an administrative determination of a dispute such as the instant one and declares that the determination of the Government or, at its option, the Secretary of Labor shall be final.

The administrative procedure for the determination of disputes concerning the payment of prevailing wage rates is detailed in the Code of Federal Regulations. See 29 C.F.R. Part 5. The procedure begins with investigations by the Secretary of Labor. § 5.11(a). Following the investigation the Secretary of Labor "may, *upon the request of a Federal agency*," (emphasis added) direct that a hearing be held before a hearing examiner. His decision is final unless one of the parties petitions for a review by the Solicitor of Labor, and his decision is subject to a discretionary review by the Wage Appeals Board, § 5.11(b). Its decision is final. § 7.1(d).

It is clear from paragraph 14 of the complaint that a wage dispute was known to HUD as early as February 5, 1973, and resulted in a directive by HUD to

---

**2.** Section 26 was apparently included in the Rocky Marciano contract pursuant to section 119(C) of the HUD-WHA contract. Section 119(C) reads:

"All questions arising under this Contract or under any contract identified in subsections (A) and (B) of Sec. 115 relating to the application or interpretation of the Copeland Act, the Contract Work Hours Standards Act, or Sec. 16(2) of the Act shall be referred to the Secretary of Labor for ruling or interpretation, and such ruling or interpretation shall be final. Each contract identified in subsections (A) and (B) of Sec. 115 shall embody the provisions of this subsection (C)."

**3.** The "Act" is the United States Housing Act of 1937, 42 U.S.C. § 1416(2). This provides in part:

"Any contract for . . . annual contributions . . . pursuant to this chapter shall . . . also contain a provision that not less than the wages prevailing in the locality, as predetermined by the Secretary of Labor pursuant to the Davis-Bacon Act, shall be paid to all laborers and mechanics employed in the development of the project involved . . . and that each such laborer or mechanic shall receive compensation at a rate not less than one and one-half times his basic rate of pay for all hours worked in any workweek in excess of eight hours in any workday or forty hours in the workweek, as the case may be;"

At the argument the attorney for HUD agreed that a schedule of wage rates was attached to the WHA-Rocky Marciano contract and that these rates had been approved by the Secretary of Labor.

WHA to withhold disbursing the $32,058 which WHA was holding. Paragraph 14 alleges that:

"Defendant, HUD, by Frank V. Loretti, Labor Relations Specialist, issued a directive, dated February 5, 1973, that no payments be made to the contractor, defendant, Rocky Marciano Construction Company."

At least as early as February 5, 1973, under § 5.11(b) of the Regulations HUD could have requested the Secretary of Labor to direct the holding of a hearing by a hearing examiner to settle the current wage dispute. The record fails to disclose that HUD ever requested such a hearing prior to the commencement of this action on March 8, 1974, and at the argument its attorney was unable to estimate when such request would be made and if made, when the hearing might be held. The failure to submit the dispute to administrative resolution was not attributable to plaintiff. It was powerless to initiate such action. That power was possessed solely by HUD. It was because of HUD's failure for thirteen months to request an administrative hearing that the dispute did not come up for administrative determination. The fault cannot be placed at WHA's doorstep. Under the circumstances WHA's obligation under Sec. 119(B) of the HUD-WHA contract does not bar it from maintaining this action.

### Legal Obligation to Seek Administrative Remedy

In its brief HUD has argued that an administrative remedy being available for the determination of the wage dispute, the Court is without jurisdiction to entertain the action. This argument was without foundation. 28 U.S.C. § 1335 clearly confers jurisdiction upon the Court.

Furthermore, there is no basis in law which requires a dismissal of the complaint because of the failure of plaintiff and defendants to exhaust their administrative remedies, as HUD argues. The case does not involve the doctrine of administrative remedy exhaustion. Since the judicial and administrative jurisdiction to determine wage disputes is coordinate, the case involves the principle of "primary jurisdiction". The distinction was explained in United States v. Western Pacific Railroad Co., 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956):

"The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 433, 60 S.Ct. 325, 331, 84 L.Ed. 361."

Continuing the Court said:

"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes

have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. See Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553. More recently the expert and specialized knowledge of the agencies involved has been particularly stressed. See Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576."

More recently it was noted in International Brotherhood v. Hardeman, 401 U.S. 233, 238, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971) that an important consideration in determining whether an administrative agency should be accorded primary jurisdiction, in a case where coordinate jurisdiction exists between the agency and the courts, is whether the case raises issues of fact not within the conventional expertise of a judge or requires the exercise of administrative discretion by the agency created by Congress. The instant case involves neither of these factors. Here there appears to be two simple issues: one factual and the other legal; factual, whether wages specified in a wage schedule attached to the WHA-Rocky Marciano contract have in fact been paid, and legal, whether the statute of limitations, a defense raised by Rocky Marciano, is a bar to the claims asserted by the other defendants. Where, as here, the problems of the litigation are well within the ordinary competence of the judge to solve, he should retain the case. A reference of it to an administrative body would amount to an abuse of discretion, and possibly cause the issuance of a writ of mandamus directing him to retain it. See New York Susquehanna & Western Railroad Co. v. Follmer, 254 F. 2d 510, 513–14 (3rd Cir. 1958).

The motion of HUD to dismiss the complaint should be denied.