**Eddie KNIGHT, Plaintiff,**

v.

**INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION,
Defendant.**

**No. CIV.A. 01–005 JJF.**

United States District Court,
D. Delaware.

June 24, 2005.

Perry F. Goldlust, Esquire of Aber, Goldlust, Baker & Over, Wilmington, DE, Of Counsel: Michael J. Goldberg, Esquire, Cherry Hill, NJ, and Paul Alan Levy, Esquire of Public Citizen Litigation Group, Washington, DC, for Plaintiff.

Stephen B. Potter, Esquire of Potter Carmine Leonard & Aaronson, P.A., Wilmington, DE, Of Counsel: Ernest L. Mathews, Jr., Esquire and John P. Sheridan, Esquire of Gleason & Mathews, New York City, for Defendant.

## OPINION

FARNAN, District Judge.

This is an action brought pursuant to the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401–531, by Plaintiff, Eddie Knight, against Defendant, International Longshoremen's Association ("ILA").

## BACKGROUND

On January 3, 2001, Mr. Knight and three other plaintiffs filed a lawsuit against the ILA alleging: 1) violation of Plaintiffs' rights to procedural safeguards pursuant to section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5); 2) violation of Plaintiffs' right to free speech under the LMRDA, pursuant to sections 101(a)(2) and 609, 29 U.S.C §§ 411(a)(2) and 529; 3) a challenge to Articles XVIII and XXVII of the ILA Constitution as overbroad and vague, and pursuant to LMRDA section 101(a)(2), 29 U.S.C. § 411(a)(2); and 4) violation of LMRDA section 105, 29 U.S.C. § 415. (D.I. 23.)

In its Answer (D.I. 24), ILA raised two trademark counterclaims, one under common law and one under the Lanham Act, 29 U.S.C. § 1051 *et seq.*

On October 8, 2003, the Court entered an Order (D.I. 60) granting summary judgment for the ILA with regard to Plaintiff Charles Miller–Bey's LMRDA section 101(a)(5) claim regarding procedural safeguards against improper union discipline. The Court further granted summary judgment with regard to most of the Mr. Knights' LMRDA section 101(a)(2) free speech claims, but did not grant summary judgment with respect to Mr. Knight's claim that his fine violated LMRDA sec-

tions 101(a)(2) and 609.[1] The Court also granted summary judgment with regard to Plaintiffs' LMRDA section 105 claim. Further, the Court abstained from deciding Plaintiffs' challenges to the two provisions of ILA's Constitution because it found insufficient evidence to warrant the Court's involvement in examining the general adequacy of the union's constitutional provisions. The Court denied Plaintiffs' motion for summary judgment with regard to ILA's trademark counterclaims. However, the ILA has since withdrawn its counterclaims. (D.I. 66 at 3).

On June 10 and 14, 2004, the Court held a bench trial on the remaining claims. The following constitutes the Court's findings of fact and conclusions of law with regard to Mr. Knight's LMRDA section 101(a)(5), 101(a)(2), and 609 claims.

## FINDINGS OF FACT

1. Defendant ILA is a labor organization within the meaning of 29 U.S.C. section 402(i). ILA is an international union with its headquarters in New York, New York. (D.I. 66 at 4.)

2. Plaintiff Eddie Knight is a member of ILA Local 1694 in Wilmington, Delaware. From April 2000 through August 2000, Mr. Knight served as the Financial Secretary of Local 1694 in Wilmington, Delaware. (D.I. 66 at 3.)

3. The Workers' Coalition is a caucus of ILA members and local officers. The mission of the Workers Coalition is to address issues of concern within the ILA. The Workers' Coalition has members from ILA locals in various ports, including Wilmington, Savannah, Charleston, and New Orleans. The Coalition is not an official organ of the ILA and is not approved by the ILA. (D.I. 66 at 4.)

4. The official, public position of the ILA is that it disapproves of the Workers' Coalition. (D.I. 66 at 4.)

5. ILA President John Bowers told others within the ILA that he had heard that the International Trade Federation, of which the ILA is a member, was investigating the Workers' Coalition for possible Communist associations. Vice–President James Paylor repeated that charge to a meeting of local union leaders in Philadelphia. (D.I. 66 at 5.)

6. In April 2000, Local 1694 hosted a national meeting for the Workers' Coalition in Wilmington, Delaware. In connection with preparations for the meeting, Mr. Knight disseminated promotional materials bearing the name of ILA Local 1694. (D.I. 66 at 5.)

7. A copy of one of these promotional materials came to the attention of Adam McBride, Executive Director of the Diamond State Port Corporation ("Diamond State"). Diamond State is an instrumentality of the State of Delaware, which owns the Port of Wilmington. Diamond state is an employer of members of ILA Local 1694–1, a local different from Local 1694. (D.I. 66 at 5.)

8. Mr. McBride agreed to address the Workers' Coalition and to contribute $500 toward the cost of the meeting. (D.I. 66 at 5.)

---

1. The Court addressed the section 101(2)(a) claim in the context of summary judgment; however, there was an error in the resulting Order that was not brought to the Court's attention and that appears to have resulted in some confusion among the parties as to the Court's ruling with regard to this claim. (D.I. 59, 60.) Subsequent to the Court's summary judgment ruling, Mr. Knight filed, and the Court granted, a Motion To Amend The Pretrial Order (D.I. 66) to which there was no opposition filed. The amendment reintroduced the section 101(2)(a) claim. To avoid prejudice to any party, rather than vacate the Court's Order granting the motion to amend the pretrial order, the Court will address the section 101(2)(a) claim anew on a fully developed factual record.

9. Before Mr. McBride made the contribution, he met with Mr. Knight, at which time Mr. Knight did not decline the contribution. (D.I. 66 at 6.)

10. On February 21, 2000, Mr. Knight wrote to Mr. McBride, thanking him for the $500 contribution. (D.I. 66 at 6.)

11. On March 9, 2000, Diamond State wrote a check for $500 made payable to the hotel in which the April Workers' Coalition meeting was to be held. (D.I. 66 at 6.)

12. When ILA Vice–President James H. Paylor, Jr. learned of the Workers' Coalition meeting, he contacted Mr. McBride and told him that the Workers' Coalition was not affiliated with the ILA. Mr. McBride subsequently decided not to speak at the meeting; however, he did not withdraw his financial support. (D.I. 66 at 6.)

13. Mr. Knight, Charles Miller–Bey, and another member of the Workers' Coalition and Local 1694, Reginald C. Johnson, filed internal union charges against Mr. Paylor for allegedly interfering with the autonomy of Local 1694. (D.I. 66 at 6.)

14. Mr. Paylor filed counter-charges against Mr. Knight, Mr. Miller, and Mr. Johnson for violations of provisions of the ILA Constitution that prohibit the use of ILA's name or logo without permission (Article XXVII) and for conduct detrimental to the welfare of the ILA (Article XVIII). (D.I. 66 at 6.)

15. Article XXVII § 1 of the ILA Constitution prohibits the use of the ILA's name, abbreviation, or logo "for any advertising purposes whatsoever, without the written authority to do so from the International Executive officers." (D.I. 66 at 7.)

16. Article XXVII § 3 of the ILA Constitution prohibits the use of ILA's name, abbreviation, or logo "in connection with any printing, publication or otherwise, unless authorized in writing by the International Executive officers." (D.I. 66 at 7.)

17. The written charges provided to Mr. Knight, Mr. Miller–Bey, and Mr. Johnson contained references to the specific provisions of the ILA Constitution that they were accused of violating, but did not describe specific conduct or identify specific documents on which ILA's name or logo were allegedly used. (D.I. 66 at 6.)

18. ILA president John Bowers appointed a Committee to hear the disciplinary charges filed by Mr. Paylor against Mr. Knight, Mr. Miller–Bey, and Mr. Johnson. Mr. Bowers appointed ILA Vice–Presidents John D. Baker, Horace Alston, and Stephen Knott as members of the Committee. Mr. Baker chaired the Committee. (Pl. Exs. 9, 10; Trial Tr. at A–55.)

19. On August 23, 2000, the Committee heard the complainants on both sets of charges. (D.I. 66 at 6.)

20. Before the hearing, none of the Committee members had any knowledge of the facts underlying the charges and received no instructions form the ILA as to how the matter should be decided. (Trial Tr. at A–56–57, B–26, B–10.)

21. A few days before the hearing, Mr. Knight, Mr. Miller–Bey, and Mr. Johnson requested from the ILA further details about the charges against them. The ILA denied the request. (D.I. 66 at 6.)

22. The hearing lasted over five hours was not recorded or transcribed. (D.I. 66 at 7.)

23. Mr. Knight asked whether he could tape record the hearing. The Committee denied his request. (Trial Tr. at A–26.)

24. At the hearing, Mr. Knight admitted that he had circulated documents containing ILA Local 1694's name and abbre-

viation and that he had accepted Mr. McBride's donation of $500. (D.I. 66 at 7.)

25. The Committee dismissed the charges against Mr. Paylor. (Pl.Ex. 9.) Mr. Miller–Bey and Mr. Johnson were not disciplined. The Committee found Mr. Knight guilty of unauthorized use of the ILA name and logo to solicit funds for the Workers' Coalition. Further, the Committee found Mr. Knight guilty of conduct detrimental to the ILA based on his acceptance of the $500 from an employer representative. (Pl.Ex. 10.)

26. Specifically, the Committee found that Mr. Knight had misled Mr. McBride into believing that the Workers' coalition meeting was endorsed by the ILA. The Committee also found that Mr. McBride's donation and Mr. Knight's acceptance of that donation violated the Labor–Management Relations Act provisions proscribing gifts from employers to employee representatives. The Committee further noted that the Workers' Coalition should not have used the ILA logo or the Local 1694 name in combination with the solicitation of funds. The Committee found that in doing so, Mr. Knight engaged in conduct detrimental to the union as prohibited by the ILA constitution. (Pl.Ex. 10.)

27. The Committee recommended that Mr. Knight be suspended from his office with Local 1694 for a period of six months. Further, the Committee fined Mr. Knight $500 and directed him to pay the fine to Diamond State. (Pl.Ex. 10.)

28. The 32 members of the ILA's Executive Council unanimously approved the Committee's recommendations. (D.I. 66 at 7.)

## CONCLUSIONS OF LAW

### I. Whether The ILA Violated LMRDA Section 101(a)(5)

Mr. Knight contends that he was "denied sufficient notice and a reasonable time to prepare [his] defenses," in violation of LMRDA section 101(a)(5), 29 U.S.C. § 411. Specifically, Mr. Knight argues: 1) the charges filed against him were insufficient and should have been clarified before the day of the hearing; 2) the Committee unlawfully denied Mr. Knight's request to tape record the hearing; 3) the Committee was biased against him; and 4) no evidence was presented at the hearing that could support the Committee's findings that Mr. Knight had committed the offenses with which he was charged.

 LMRDA section 101(a)(5) states that "[n]o member of any labor organization may be fined suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." The written charge must be specific enough to inform the accused of the offense with which he is charged. *Int'l Broth. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers, and Helpers, AFL–CIO v. Hardeman*, 401 U.S. 233, 245, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971). To establish a violation of section 101(a)(5)(A), a disciplined member must demonstrate that he was misled or otherwise prejudiced in the presentation of his defense. *Hardeman*, 401 U.S. at 245, 91 S.Ct. 609.

 As a threshold matter, the Court concludes that the fine imposed upon Mr. Knight amounted to discipline under LMRDA section 101(a)(5) and, therefore, the procedures required by section 101 are implicated in the imposition of the fine. Further, the Court concludes that the removal of Mr. Knight from his position as Financial Secretary of Local 1694 is not discipline for the purposes of section 101 of the LMRDA. *See Finnegan v. Leu*, 456

U.S. 431, 437, n. 9, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982).

For the reasons discussed, the Court concludes that Mr. Knight was given all of the rights due him under section 101(a)(5) of the statute.

A. *Whether The Charges Were Specific And Mr. Knight Had Time To Prepare A Defense*

■ With regard to the specificity of the charges and the time to prepare a defense, the parties do not contest that, prior to the hearing, Mr. Knight was provided only the provisions of the constitution that he allegedly violated. He was not told what conduct was questioned or given a factual basis for the charges against him. However, Mr. Knight testified that on the morning of the hearing, the ILA gave him a packet of information about the pending charges, including evidence on which the charges were based. (Trial Tr. at A–26:23—A–28:2; Plaintiff's Ex. 5.)

Further, all three members of the Committee testified that Chairman Baker ruled that if, at the end of Mr. Knight's case against Mr. Paylor, Mr. Knight felt he needed more time to prepare, it would be granted. Specifically, Mr. Baker testified that the Committee offered to adjourn if Mr. Knight didn't feel comfortable proceeding. (Trial Tr. at A–61–62.) Mr. Alston testified that after Mr. Knight stated he was not prepared and didn't have enough evidence to proceed, "the chairman offered to extend the time, if necessary." (Trial Tr. at B–3.) Finally, Mr. Knott testified that Mr. Baker made a ruling with respect to an adjournment of the hearing if Mr. Knight and the two other individuals needed more time. (Trial Tr. B–11.) Both Mr. Knight and Mr. Miller–Bey testified that no such offer was made. (Trial Tr. at A–27, A–83.)

In his post-trial memorandum, Mr. Knight concedes that the outcome of his LMRDA section 101(a)(5) claim "comes down to deciding which side's witnesses are more credible on the question of whether the ILA's hearing panel offered Knight an adjournment in order to cure the union's failure to provide Knight with adequate notice of the charges against him." (D.I. 94 at 9.) The Court finds the testimony of the Committee members credible. All three appointed Committee members had flown to New York from various parts of the country specifically to hear the charges against Mr. Paylor, Mr. Knight, Mr. Miller–Bey, and Mr. Johnson. All three Committee members had many years of service in the ILA and had previously served on committees. Further, the information packet provided to Mr. Knight, coupled with the Committee's offer to adjourn the hearing, had the effect of curing any inadequacy of the explanation of the charges against Mr. Knight.

For these reasons, the Court concludes that Mr. Knight's rights under section 101(a)(5) of the statute with regard to written specific charges and reasonable time to prepare a defense were not violated.

B. *Whether The Committee Unlawfully Denied Mr. Knight's Request To Tape Record The Hearing*

■ Mr. Knight contends that when the Committee denied his request to tape record the hearing, the Committee violated Mr. Knight's right to a full and fair hearing in violation of section 101(a)(5). In support of his contention, Mr. Knight cites a decision by the Second Circuit that a labor union cannot prevent an accused member from recording disciplinary proceedings when the union itself does not provide a verbatim record. *Rosario v. Amalgamated Ladies' Garment Cutters, Local 10,* 605 F.2d 1228, 1242 (2d Cir.

1979). However, Mr. Knight has not cited any statute, bylaws, or procedural rules requiring that an official record of the hearing must be allowed. Mr. Knight argues that a recording would have proven that no offer to adjourn was made by the Committee. Considering the circumstances of this case, the Court concludes that the absence of a recording is insufficient to constitute a violation of Mr. Knight's right to a full and fair hearing under section 101(a)(5).

## C. Whether The Committee Members Were Biased Against Mr. Knight

■ Mr. Knight contends that the members of the Committee were biased against him and, thus, he was denied a full and fair hearing because Committee members had previous knowledge of the facts of the case before the hearing. In support of this assertion, Mr. Knight's counsel submitted two letters, one from Mr. Alson to President Bowers in which he stated his hope that the Workers' Coalition would not achieve success in its goal of separating the union, and one from Mr. Paylor discussing Mr. Paylor's handling of the charges against Mr. Paylor. (Pl. Exs. 17, 18.) Mr. Paylor's letter was copied to all ILA vice-presidents. Each of the Committee members testified that Mr. Knight's membership in the Workers' Coalition had no effect on his decision.

On this record, the Court finds that Mr. Knight has failed to establish that any member of the Committee was actually biased against him. The Court reaches this conclusion after considering the letters and how they might affect the Committee members' impartiality toward Mr. Knight in light of the procedures in place for the union to resolve members' grievances. In these circumstances, something more, such as a statement of bias or other conduct evidencing actual bias, is necessary. Also, considering the conduct at issue and the Committee's review and decision, the Court concludes that objective evidence existed to support the Committee's decision, which likewise militates against an actual bias against Mr. Knight.

For these reasons, the Court concludes that Mr. Knight has not established that the members of the Committee were biased against him.

## D. Whether The Committee's Finding Is Supported By "Some Evidence"

Mr. Knight contends that no evidence was presented at the hearing supporting the Committee's findings that Mr. Knight had committed the offense for which he was disciplined.

■ In determining whether a union member had full and fair hearing before a union tribunal, the Court is not free to substitute its judgment for that of the tribunal. Rather, the Court is to ensure that there is "some evidence" to support the union's findings. *Lewis v. Am. Fed. of State County and Municipal Emp., AFL-CIO*, 407 F.2d 1185 (3d Cir.1969); *Int'l Broth. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL-CIO v. Hardeman*, 401 U.S. 233, 246, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971).

■ A review of the record from the hearing leads the Court to conclude that the Committee's finding that Mr. Knight improperly used the ILA name to solicit funds is supported by "some evidence." Mr. Knight admitted at the hearing that he had circulated promotional material containing ILA Local 1694's name and abbreviation and that he accepted Mr. McBride's $500 donation. Mr. McBride and Mr. Knight communicated by letter with regard to the $500 donation. Both the promotional material and correspondence between Mr. Knight and Mr. McBride were included in the evidentiary

packet presented to Mr. Knight at the hearing.

On this record, the Court concludes that the Committee's finding that Mr. Knight used the ILA name to improperly solicit funds is supported by "some evidence." Further, the Court concludes that Mr. Knight was given all of the rights due him under section 101(a)(5) of the statute.

## II. Whether The ILA Violated LMRDA Sections 101(a)(2) And 609

Mr. Knight contends that the activities for which he was charged and disciplined are protected by the freedom of speech and assembly provisions of LMRDA section 101(a)(2), 29 U.S.C. § 411(a)(2), and the limitations on discipline in LMRDA section 609, 29 U.S.C. § 529. Mr. Knight contends that the ILA charged him with the intent of chilling speech and, thus, the ILA violated section 101(a)(2).

In relevant part LMRDA section 101(a)(2) states that

> [e]very member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions . . . . *Provided,* [t]hat nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C.A. § 411(a)(2).

In relevant part, LMRDA section 609 states that

> [i]t shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for

exercising any right to which he is entitled under the provisions of this chapter.

29 U.S.C.A. § 529.

■ With regard to Mr. Knight's section 101(a)(2) claim, the Court concludes that Mr. Knight has not shown that the ILA had an intent, by issuing the charges, to silence speech and debate. Without such evidence, the Court cannot agree with Mr. Knight on his LMRDA section 101(a)(2) claim. The ILA does not contest that it had a negative view of the Workers' Coalition or that Mr. Bowers and Mr. Paylor communicated within the ILA about the Workers' Coalition. However, the charges brought against Mr. Knight were brought by Mr. Paylor as an individual ILA member, not by the ILA. Mr. Knight has not presented any evidence to establish that the ILA is responsible for the initiation of the charges. In fact, it was only after Mr. Knight filed charges against Mr. Paylor that Mr. Paylor responded by initiating the charges that resulted in Mr. Knight being disciplined.

Further, although section 101(a)(2) gives Mr. Knight the right to "to meet and assemble freely with other members; and to express any views, arguments, or opinions . . .," the Committee disciplined Mr. Knight for "using the ILA logo to solicit funds." (Trial Tr. at A–58.) The Court agrees with the Defendant that the use of the ILA logo to solicit funds is not within the universe of rights contemplated by LMRDA section 101(a)(2).

For these reasons, the Court concludes that the ILA did not violate LMRDA section 101(a)(2).

■ With regard to Mr. Knight's section 609 claim, the Court concludes that the Committee's decision was based on Mr. Knight's acceptance of funds from Mr. McBride and not Mr. Knight's membership in the Workers' Coalition. In this

regard, the Court notes that the Committee exonerated Mr. Miller–Bey and Mr. Johnson, who were exercising the same rights to speech as Mr. Knight. In fact, Mr. Alston testified that Mr. Miller–Bey and Mr. Johnson were not disciplined because they did not improperly accept or solicit any money. (Trial Tr. at B–4.) Mr. Baker testified that the Committee found Mr. Knight in violation of ILA's constitution for using the ILA logo to solicit funds. (Trial Tr. at A–80,A–58.) Mr. Baker further testified that he did not know anything about the Workers' Coalition or the underlying facts of the charges before the day of the hearing. (Trial Tr. at A–56–57.) Mr. Knott testified that his decision would be the same whether Mr. Knight was a member of the Workers' Coalition or not. (Trial Tr. at B–26.) The Committee's report clearly bases the Committee's recommendation to discipline Mr. Knight on his use of the ILA name to solicit funds and his acceptance of those funds and no other grounds. (Pl.Ex. 10.)

For these reasons, the Court concludes that the ILA did not violate section 609 of the LMRDA when it disciplined and ordered Mr. Knight to return, as restitution for his improper acceptance of funds, the funds to Mr. McBride's organization.

## CONCLUSION

For the reasons discussed, the Court concludes that Mr. Knight has not proven by a preponderance of the evidence that the ILA violated his rights under sections 101(a)(5), 101(a)(2), and 609 of the LMRDA, 29 U.S.C. §§ 411(a)(5), 411(a)(2), and 529.

An appropriate Order will be entered.

## ORDER

At Wilmington, this 24 day of June 2005, for the reasons set forth in the Opinion issued this date;

IT IS HEREBY ORDERED that:

1) Judgment is entered in favor of Defendant International Longshoremen's Association and against Plaintiff Eddie Knight with regard to Plaintiff's claims that the Defendant violated his rights under sections 101(a)(5), 101(a)(2), and 609 of the LMRDA, 29 U.S.C. §§ 411(a)(5), 411(a)(2), and 529;

2) Defendant's Motion To Vacate Court's Order Entered April 30, 2004, Granting Plaintiffs' Motion To Amend Pretrial Order (D.I. 69) is *DENIED*.